In re: **TAYLOR & CAMPAIGNE, INC.,** **d/b/a Taylor & Associates, Debtor.**

Lauren **JOHNSON, Trustee of the Estate** **of Taylor & Campaigne, Inc. d/b/a** **Taylor & Associates, Plaintiff,**

v.

**CMT HOLDING, LIMITED, t/a The Prudential Florida Realty, Robin Harrington, and Williams, Parker, Harrison, Dietz & Getzen, Defendants.**

**Bankruptcy No. 92–2834–8P7.** **Adv. No. 92–371.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 7, 1993.

See also 138 B.R. 632.

Dennis J. LeVine, Tampa, FL, for plaintiff.

Marsha G. Rydberg, Tampa, FL, for Harrington.

David S. Jennis, St. Petersburg, FL, for CMT.

Jeffrey A. Grebe, Sarasota, FL, for Williams, Parker, Harrison, Dietz and Getzen.

ORDER GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AND DENYING ROBIN HARRINGTON'S MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an adversary proceeding commenced by Lauren Johnson (Trustee), Trustee of the estate of Taylor & Campaigne, Inc. d/b/a Taylor & Associates (Debtor), against CMT Holding Limited, t/a The Prudential Florida Realty (Prudential or Selling Broker) and Robin Harrington (Harrington). The Trustee, in her complaint, seeks a declaratory judgment to the effect that Defendants are not entitled to certain real estate commissions received by the Trustee on behalf of the Debtor. The matters presently under consideration are Motions for Summary Judgment filed by the Trustee and Harrington. The motions were set for hearing in due course, at which time this Court heard argument of counsel in support of their respective motions. Both the Trustee and Harrington agree that there are no genuine issues of material fact and therefore this Court may resolve the controversy as a matter of law. The Court has considered the Motions, together with the record, and finds the undisputed facts relevant to the resolution of this matter to be as follows:

At the time relevant, the Debtor corporation, owner and operator of a real estate brokerage firm, maintained a real estate office in Sarasota and Manatee County, Florida. Prior to the filing of the Petition in this case, the Debtor participated in the Multiple Listing Service (MLS) with other real estate brokers, including Prudential, located in Sarasota and Manatee County, Florida. The MLS marketed various real estate properties to the public through a listing broker who offered a portion of the sales commission, to be earned upon closing the sale of the property, to a selling broker who actually procured a buyer.

Prudential is a licensed real estate brokerage firm with offices in Manatee and Sarasota County, Florida. It is Prudential's contention that because it was the "selling broker" for one of the two contracts later discussed in this opinion, it is entitled to the commission paid for the sale of real estate. Harrington, the other Defendant, is a registered real estate agent who acted as an independent contractor procuring real estate sales and listings for the Debtor. According to his oral agreement with the Debtor, Harrington was enti-

tled to receive a portion of each commission paid for the sale of real estate that he listed.

In late February, 1992, Martin J. and Edith V. Bartelmay, as sellers, and James P. and Clara A. McGonigle, as Purchasers, entered into a Contract for Sale of Real Estate (Bartelmay/McGonigle Contract) (Exh. D to Harrington's Answer and Counterclaim). In the same time period, William O. Wymer and Deanne Wymer, as sellers, and William P. Deluca and Kathleen Deluca, as buyers, also entered into a Contract for Sale of Real Estate (Wymer/Deluca Contract) (Exh. B to Harrington's Answer and Counterclaim). It is undisputed that the Debtor entered into listing agreements with the two homeowners to list their respective homes for sale approximately two weeks prior to the execution of the Bartelmay/McGonigle Contract (Exh. C to Harrington's Answer and Counterclaim) and the Wymer/Deluca Contract (Exh. A to Harrington's Answer and Counterclaim). Harrington was the Debtor's agent involved in arranging both listings. The listing agreements provided that the named sellers would pay a commission, representing a percentage of the sale price, to the Debtor as realtor. The listing agreements, however, made no provision for the payment of commissions to the individual agent or to the broker procuring the buyer.

It is without dispute that Prudential was the "selling broker" who obtained the purchasers for the Bartelmay/McGonigle Contract. However, both contracts for sale provide in Paragraph 14 that a sales commission was due and payable to the Debtor, the original listing broker. Both sales contracts provided: "Realtors and their agents procuring this sale are agents of sellers and will be paid by seller." Both sales contracts were entered into pre-petition and both closed post-petition.

The Bartelmay/McGonigle Contract closed in late April, 1992, and a sum of $50,050.00, the commission for the sale in which Prudential was involved, was placed into an escrow account held by Defendant Williams, Parker, Harrison, Dietz & Getzer (Williams, Parker). The Wymer/Deluca Contract closed in the same time period, and a sum of $43,750.00 was disbursed by Williams, Parker to the Trustee. It is important to note that Williams, Parker claims no interest in the funds. Moreover, no funds were distributed to either Prudential or Harrington. Both Prudential and Harrington, however, claim an interest in the funds for their respective commissions. Yet, it should be noted that neither Harrington nor Prudential is a party to either the listing agreements or the sales contracts.

It is the contention of the Trustee that neither Prudential nor Harrington have any right to the commissions involved and, at most, each holds an unsecured claim in this Chapter 7 case. This contention is based on the proposition urged by the Trustee that the commissions involved in this controversy are properties of the estate by virtue of § 541 of the Bankruptcy Code. More specifically, the Trustee claims that the Debtor's right to payment of the commissions became vested *pre-petition*, subject only to a possible defeasance if the sale did not close. As a result, pursuant to the listing agreements and the specific terms of the Bartelmay/McGonigle Contract and the Wymer/Deluca Contract, the commissions are property of the estate by virtue of § 541 of the Bankruptcy Code. Accordingly, the Trustee claims that both Prudential and Harrington have nothing more than an unsecured claim and that she has no legal obligation to pay commissions to either Prudential or Harrington. In support of this argument, the Trustee relies on the recent case decided by this court, *In re Bob Hamilton Real Estate, Inc.*, 138 B.R. 301 (Bankr.M.D.Fla.1992).

In opposition, Harrington contends that the commissions are held in trust for his benefit and therefore, his equitable interest in the commissions is excluded from property of the estate by virtue of § 541(d). In support of his argument, Harrington relies on the case of *Best–Morrison Properties, Inc. v. Dennison*, 468 So.2d 483 (Fla. 2d DCA1985), and argues that this Court should recede from its prior holding in a virtually identical case, *In re Bob*

*Hamilton Real Estate, Inc., supra.* In *Bob Hamilton,* this Court found that a real estate salesman did not have an equitable interest in commissions received by the debtor/broker but rather had merely an unsecured claim against the debtor's estate, where the salesman earned the commission pre-petition, the sales contract provided that the commissions were payable to the debtor, and the debtor did not hold the commission in constructive trust for the salesman.

At the outset, it is clear that there are no genuine issues of material fact and therefore, the controversy under consideration may be resolved as a matter of law. As it is undisputed that each of the real estate contracts provides that the commission is payable to the Debtor, there is no question that the commissions earned from the sales are monies due to the Debtor and thus constitute property of the estate pursuant to 11 U.S.C. § 541(a)(1).

As in the case *In re Bob Hamilton Real Estate, Inc., supra,* Harrington earned his fee pre-petition at the time he located a purchaser ready, willing, and able to buy the property in question on terms acceptable to the seller. *See, In re Charter Company,* 52 B.R. 267 (Bankr.M.D.Fla. 1985). Thus, his right to payment from the Debtor arose pre-petition. The fact that the commission was paid at a closing that occurred post-petition does not change the result. *See, In re Fields, Inc.,* 22 B.R. 861 (S.D.N.Y.1982). In sum, Harrington has nothing more than an unsecured claim against the Debtor.

■ Although Harrington's position appears similar to that of Prudential, Prudential's argument is slightly different. In support of its claim to a percentage of the commission, Prudential urges that the commission from the Bartelmay/McGonigle Contract is held in trust for its benefit, and therefore, the funds are excluded from property of the estate pursuant to § 541(d). The basis for Prudential's argument is a custom in the industry that all brokers participating in the MLS divide the commission in multiple listing transactions. As to the Bartelmay's property, the "profile" of the property transmitted through the MLS specified that the selling broker (Prudential) would be entitled to a commissions of 3.5% of the selling price of the property. In addition, Prudential cites the Rules of the Florida Real Estate Commission 21V–14.013, which provides:

> Any broker who shall receive any funds, money, check, draft or other things of value, which by the terms of any lawful cooperative broker contract, or any other contract, whether the same shall be oral or written, is to be shared, divided or paid over, to any other broker, or non-licensed person, the broker receiving the same shall hold it in his trust or escrow account for such other broker, or nonlicensed person, and upon demand or on the date provided by the terms of said contract, shall promptly account for and pay or deliver the same to the broker or nonlicensed person entitled to receive it, provided however, that such broker may deduct such lawful set-offs, or counter-claims as may at that time be due and owing to him by the other broker or nonlicensed person entitled to receive such refunds.

However, it is undisputed that the listing agreements and real estate contracts provide that all real estate commissions be paid directly to the Debtor corporation and that the Debtor and Prudential did not have an oral or written agreement to divide the commissions. At most, therefore, Prudential merely has an unsecured claim.

Based on the foregoing, it is

ORDERED, ADJUDGED AND DE-CREED that the Trustee's Motion for Summary Judgment is granted, and a separate Final Judgment will be entered in favor of the Trustee and against the Defendants Prudential and Harrington. It is further

ORDERED, ADJUDGED AND DE-CREED that the Motion for Summary Judgment filed by Robin Harrington is hereby denied.

DONE AND ORDERED.