In re TAYLOR & CAMPAIGNE,
INC. d/b/a Taylor & Assoc.,
Inc., Debtor.

Robin HARRINGTON, Appellant,

v.

Lauren JOHNSON, Trustee of the Estate
of Taylor & Campaigne, Inc., d/b/a
Taylor & Associates, Appellee.

No. 93–241–CIV–T–17(C).
Bankruptcy No. 92–02834–8P7.
Adv. No. 92–00371.

United States District Court,
M.D. Florida,
Tampa Division.

July 29, 1993.

Marsha Griffin Rydberg, Rydberg, Goldstein & Bolves, P.A., Tampa, FL, for appellant.

Dennis Jay Levine, Cramer, Haber, McDonald & Levine, P.A., Tampa, FL, for appellee.

KOVACHEVICH, District Judge.

This cause is before the Court on appeal from the Order Granting Trustee's Motion for Summary Judgment and Denying Robin Harrington's Motion for Summary Judgment entered on January 7, 1993, by Chief Bankruptcy Judge Alexander L. Paskay. 149 B.R. 993.

STANDARD OF APPELLATE REVIEW

Findings of fact by the Bankruptcy Court will not be set aside unless clearly erroneous. Bankruptcy Rule 8013; *In re Downtown Properties, Ltd.*, 794 F.2d 647 (11th Cir.1986). However, the appellant is entitled to an independent, de novo review of the bankruptcy court's conclusions of law. *In re Bicoastal Corp.*, 125 B.R. 658 (M.D.Fla.1991).

FACTS

The undisputed facts show that the Debtor, Taylor & Compaigne, Inc. d/b/a Taylor & Associates, Inc. ("Debtor") was a licensed Florida real estate broker. Appellant Robin Harrington ("Harrington") is a licensed real estate salesman who became associated with the Debtor as an independant contractor to procure prospective sellers to enter into listing agreements with the Debtor.[1]

---

1. CMT Holding Limited ("Prudential"), a co-broker with the Debtor and a defendant below, did not appeal the court's order below.

On February 10, 1992, Harrington procured William and Deanne Wymer ("the Wymers") to enter into a listing agreement with the Debtor for the purpose of selling their home. On February 11, 1992, Harrington also procured Merton and Edith Bartlemay ("the Bartlemays") to enter into a listing agreement with the Debtor for the same purpose.

On February 28, 1992, the Wymers contracted with William and Kathleen DeLuca for the sale of their home ("Listing # 1"), and the Bartlemays contracted with James and Clara McGonicle for the sale of their home ("Listing # 2").

On March 3, 1992 the Debtor filed the subject Chapter 7 petition for bankruptcy. On or about April 30, 1992, the sales under both contracts were closed. Therefore, both contracts were entered into pre-petition and both closed post-petition.

As a result of Harrington's efforts, Harrington was entitled to receive commissions from each sale in the amount of $39,375, representing 5 percent of the total sales price for the first contract and $22,522, representing 7 percent of the total sales price for the second contract, for a total amount of $61,897. The proceeds from the Wymer contract, which include the sales commissions, were paid to and are being held by the Trustee. The proceeds from the Bartlemay sale are being held by defendant Williams, Parker, et al., which makes no claim to these funds. No funds have been distributed to Harrington.

On May 11, 1992, the Trustee filed a declaratory judgement seeking determination of the rights of Harrington and CMT to the commissions from each sale, as the Trustee claims the commissions are property of the estate. Each party filed Motions for Summary Judgment, and on January 7, 1993, the Bankruptcy Court granted Summary Judgment for the Trustee. The Court found that the commissions were due and payable to the Debtor, and thus constitute property of the estate, and that Harrington and CMT had nothing more than general unsecured claims against the estate.

## ISSUES

Whether the Bankruptcy Court erred in finding that the commissions due to Harrington are property of the estate, or whether they were held in constructive trust for Harrington and thus are not property of the estate.

## DISCUSSION

Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property excluded from the estate includes any property held by debtor in trust for another. 11 U.S.C. § 541(d).

■ However, the burden of proving the existence of a trust relationship is on the party claiming the benefit of such a relationship. *Georgia Pacific Corp. v. Sigma Serv. Corp.*, 712 F.2d 962, 969 (5th Cir. 1983). The Appellant, Harrington, alleges that the commissions paid to the Debtor were held in trust for him because it was the Debtor's standard office procedure to designate funds from real estate closings for a sales associate as commissions and to hold them in trust for the salesperson until distributed. He further claims that his rights to the commissions vested when Harrington found a "ready, willing and able buyer" for the property, which took place pre-petition. Therefore, although the commission funds were paid to the Debtor post-petition, Harrington claims that the Debtor held those funds in "constructive" trust for Harrington pursuant to implied agreement.

■ A constructive trust is established by contract, whether express or implied, between two parties with a mutual understanding that the specific assets will be held in trust for the other. *See generally, T & B Scottdale Contractors, Inc. v. U.S.*, 866 F.2d 1372 (11th Cir.1989); *Georgia Pacific*, 712 F.2d at 969. Harrington claims that since it was the Debtor's standard

office procedure to designate funds from real estate closings for a sales associate as commissions and to hold them in trust for the salesperson until distributed, the funds from the sales would be held in constructive trust for Harrington.

However, in a factually similar case, the Bankruptcy Court held that where an independent contractor sold real estate for the debtor, and the commissions were received by the debtor post-petition, the salesman did not have an equitable interest in the commissions which would exclude them from the debtor's estate. *Halloway v. Hyman*, 138 B.R. 301, 302 (Bankr. M.D.Fla.1992). Rather, the court found that the commissions were earned when the salesman "located a purchaser ready, willing and able to buy the property in question," which occurred pre-petition. *Id.* at 302.

Furthermore, such commissions were due to the debtor because each of the real estate contracts provided that the entire commission is payable to the Debtor. *Id.* Therefore, the commissions earned from the sales were due to the debtor pre-petition and thus constituted property of the estate, leaving the plaintiff with nothing more than an unsecured claim against the debtor. *Id.*

Similarly, in the present case, both sales contracts provide in paragraph 14 that "SELLER agrees to pay the Listing Realtor a commission in accordance with the terms of an existing separate listing agreement. Any commission payable to a Participating REALTOR shall be paid by the Listing REALTOR ..." Therefore, the commissions are payable to the Debtor.

In addition, Harrington relies on the rules promulgated by the Florida Real Estate Commission to show the Debtor/broker's obligation to pay the commissions over to the salesman. However, that reliance is misplaced. In fact, just the opposite conclusion is reached from application of that rule to this case.

The first part of section 21V–14.013 of these rules provides that:

"any broker who shall receive any funds ... which by the terms of any lawful cooperative broker contract ... is to be shared, divided or paid over *to any other broker or non-licensed person*, the broker receiving such shall hold it in his trust or escrow account for such other *broker or non-licensed person....*" Department of Professional Regulation, § 21V–14.013.

This part of the rule does not expressly pertain to the broker's "registered salesmen," but rather only to brokers or other non-licensed persons.

Moreover, the second part of the rule specifically provides:

"In the case of a broker receiving a commission, part of which is due to one his registered salesmen, said broker *may* transfer and disburse said commission from his operating account and *shall not be required to dispurse to his salesmen directly from his trust or escrow account*, provided however that said broker shall be required to account for and pay said commission to the salesman...." Department of Professional Regulation, § 21V–14.013.

Thus, in providing for the specific relationship between a broker and his registered salesman in the second part of the rule, the Real Estate Commission has expressed its intent that such a relationship, in and of itself, does not give rise to a broker's obligation to hold such commissions in trust.

Therefore, this Court agrees with the holding of the Bankruptcy Court in *Halloway*, and is satisfied that the lower court in this case did not err in holding that the commissions were part of the Debtor's estate and that Harrington has nothing more than an unsecured claim against the Debtor. Accordingly it is,

**ORDERED** that the decision of the United States Bankruptcy Court for the Middle District of Florida is **affirmed.**

**DONE and ORDERED.**