In re Regan TULLY, Debtor.

Regan TULLY, Appellant,

v.

Harold S. TAXEL, Trustee, Appellee.

BAP No. SC–95–2303–JOAs.
Bankruptcy No. 93–04790–H7.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 20, 1996.

Decided Oct. 17, 1996.

William M. Rathbone, San Diego, CA, for Appellant.

Melvin E. Morris, San Diego, CA, for Appellee.

Before: JONES, OLLASON, and ASHLAND, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

The debtor, Regan Tully ("Tully"), a real estate broker, appeals from an order of the bankruptcy court holding certain real estate commissions earned by Tully to be property of the estate. Tully was the broker for a sale of real estate which commenced approximately five years before Tully filed for chapter 7 relief.[1] The sale was pending in escrow at the time the petition was filed. A commission authorization agreement provided that Tully's commission would be paid at the close of escrow. Escrow closed three weeks postpetition. The trustee filed a motion for turnover of property which the bankruptcy court granted, finding that the commission was earned pre-petition and as such, constituted property of the estate. Tully appeals that order. **WE AFFIRM.**

## I. FACTS

Tully was a real estate broker employed by Business Real Estate Properties ("BRE") until March 1989. Tully subsequently became employed as a real estate broker for International Real Estate ("IRE"). At the time Tully terminated his employment with BRE, there were several sales transactions pending in escrow for which Tully served as the broker. One transaction pending in escrow was a sale of 13 acres in Chula Vista, California (the "property"). On November 23, 1987, the seller of the property ("Iwashita") signed a sales contract with the buyer ("Pacific Scenes"). The sales contract provided for payment of a 5% commission to be split equally, 2½% to Iwashita's broker, Toki Yano Realty, and 2½% to BRE's agents Tully and Charles Eckstrom ("Eckstrom"). A commission authorization agreement was also signed the same day providing that commissions would be paid only if escrow was consummated.

Sixteen amendments to the sales contract were negotiated involving Pacific Scenes' ability to obtain certain permits, zoning and other entitlements necessary to develop the property. Pacific Scenes was unable to obtain the entitlements that it needed and in May 1992, assigned its interest to a new buyer, Cypress Creek. The assignment provided that Pacific Scenes would not be released from the sales contract until Cypress Creek obtained the necessary entitlements which it needed. Cypress Creek obtained

---

1. Unless otherwise indicated, all references to Chapters, Sections and Rules are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, and to the Federal Rules of Bankruptcy Procedure, Rules 1001, *et seq.*

the necessary entitlements in April 1993, and Pacific Scenes was released from its contract with Iwashita. On May 4, 1993, Tully filed for chapter 7 relief. At the time the petition was filed, the sale remained in escrow. On May 28, 1993, escrow closed. Between the time the petition was filed and when escrow closed, Tully states that he worked to close escrow and sought to arrange financing for the buyer.

Disputes arose over payment of the $97,-193.25 in commissions among Tully, Appellee Harold S. Taxel (the "trustee"), BRE, IRE and Eckstrom. In July 1994, a court approved settlement was reached whereby ¼ of the commission ($24,298.31) would be paid to Tully and the trustee jointly, pending a future judicial determination as to whether the commission was property of the estate. On September 28, 1995, the trustee filed a motion for an order determining the commission to be property of the estate and for its turnover. The bankruptcy court granted the trustee's motion at a hearing held October 27, 1995. In its order entered December 4, 1995, the bankruptcy court found that Tully's right to the commission arose at the time of the execution of the original sales contract and the 1987 commission authorization agreement, and that the commission was based upon services performed pre-petition. The court further found that Tully's right to the commission was not dependent on any services performed post-petition and thus the commission was property of the estate subject to turnover by the debtor to the trustee. Tully appeals this order.

## II. ISSUE

Did the bankruptcy court err in finding that a real estate commission pending in escrow at the time the debtor filed his bankruptcy petition, and payable at the close of escrow three weeks post-petition, was property of the estate subject to turnover to the trustee?

## III. STANDARD OF REVIEW

■ We review a bankruptcy court's findings of fact under the clearly erroneous standard. *In re Pizante,* 186 B.R. 484, 488 (9th Cir. BAP 1995). Clear error exists when, after examining the evidence, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Id.* (citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948)). A bankruptcy court's conclusions of law are reviewed de novo. *In re United States Trustee,* 32 F.3d 1370, 1372 (9th Cir.1994).

## IV. DISCUSSION

■ Tully argues that the commission constituted post-petition earnings because the commission authorization agreement provided for payment upon the consummation of escrow, which happened post-petition. We disagree. Although the commission was not paid until three weeks post-petition, when escrow closed, it was earned by approximately five years of pre-petition services. As such, pre-petition earnings are property of the estate and we **AFFIRM**.

■ Section 541(a)(6) excludes from the bankruptcy estate earnings from services performed by a debtor after the commencement of the case. "Where a debtor derives post-petition commissions under a pre-petition contract, and such commissions are dependent upon the continued services of the debtor, they do not constitute property of the estate." *In re Sloan,* 32 B.R. 607, 611 (Bankr.E.D.N.Y.1983). However, where the debtor receives a commission post-petition but essentially fulfilled all of his obligations for that commission pre-petition, the commission will be deemed property of the estate. *Id.* The debtor's commission is property of the estate "if all the acts of the debtor necessary to earn it are rooted in the pre-bankruptcy past." *Id.* (citing *Segal v. Rochelle,* 382 U.S. 375, 380, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966)).

■ The bankruptcy court found that Tully's right to the commission arose at the time the original sales contract and commission authorization agreement were signed in 1987. Tully argues that pursuant to California law a real estate broker is entitled to a commission when he finds a ready, willing, and able buyer. *See Collins v. Vickter Manor, Inc.,* 47 Cal.2d 875, 306 P.2d 783, 786

484

(1957) (en banc). Tully argues that his right to a commission could not have arisen out of the original sales contract because there was a change in the buyer. Tully further argues that Cypress Creek had to finalize all entitlement issues and close escrow before it would be considered a ready, willing, and able buyer. A broker is entitled to a commission, even if escrow does not close, when the seller arbitrarily refuses to proceed with the transaction. *Id.* at 787. Cypress Creek accepted the seller's terms of sale and obtained the necessary entitlements pre-petition. There is no need to address the exact timing of when Cypress Creek became a ready, willing, and able buyer because that occurred pre-petition. Once a broker locates a buyer who is ready, willing, and able to buy the property on terms acceptable to the seller, the broker has earned the commission, even though the commission is not paid until a post-petition closing. *In re Taylor & Campaigne, Inc.,* 149 B.R. 993, 996 (Bankr. M.D.Fla.), *aff'd,* 157 B.R. 493 (M.D.Fla.1993).

It is clear in this case that Tully performed his obligations as a broker pre-petition. The sales contract and commission authorization agreement were signed in 1987. Tully was extensively involved in negotiations involving sixteen amendments to the sales contract. Tully was instrumental in finding Cypress Creek as a new buyer when Pacific Scenes was experiencing financial difficulty. At the time Tully filed his petition, the only thing remaining was the closing of escrow—which happened three weeks later. At the time of his petition, there was nothing left for Tully to do. Tully cites *In re Zahneis,* 78 B.R. 504 (Bankr.S.D.Ohio 1987), for the proposition that he is entitled to compensation for his post-petition services in helping Cypress Creek arrange financing and the close of escrow. *Zahneis* involved a real estate transaction in which only the listing of the property occurred pre-petition and the execution of the sales contract, negotiations and closing of escrow occurred post-petition. The court in *Zahneis* held that the broker's commission was not property of the estate because the acts necessary to earn the commission occurred post-petition and were not "rooted in the pre-bankruptcy past." *Id.* at 505–06. *Zahneis* is clearly distinguishable

from this case as the bulk of the debtor's obligations in *Zahneis* occurred post-petition. The bulk of Tully's efforts occurred pre-petition, over a five year period, not within the three week period following the bankruptcy filing. The bankruptcy court in this case made a finding that Tully was not required to assist Cypress Creek in obtaining financing or closing escrow. This finding is not clearly erroneous. There is no provision in either the sales contract or the commission authorization agreement which requires Tully to perform additional services such as obtaining financing for the buyer. Thus, we find that the services performed by Tully post-petition were not required in order for him to earn his commission.

■ Tully's most compelling argument is that the commission authorization agreement provided that the commission would not be paid until the consummation of escrow. A broker can make a special agreement whereby his compensation is contingent upon the happening of an event. *In re Scanlon,* 10 B.R. 245, 246 (Bankr.S.D.Cal.1981). In *Scanlon,* the debtor was a real estate broker. A purchase contract was entered into on May 1, 1980. The contract provided that the debtor would not receive his commission until either the deed was recorded or the buyer or seller defaulted, neither of which occurred until after the bankruptcy was filed. The debtor filed bankruptcy on June 16, 1980, and received a commission on June 27, 1980. The court held that the commission was property of the estate even though the debtor's right to receive the commission was not finalized until eleven days post-petition. *Id.* The court reasoned that where a personal service contract has been fully performed by the debtor, the debtor has rights on that contract which become property of the estate. *Id.* at 248. The court then stated:

While this decision may fly in the face of California cases which have determined if a real estate commission has been "earned," it is consistent with the law of assignability of contracts and the purposes of bankruptcy. When a debtor has fully completed performance under an employment agreement prior to bankruptcy, the question is not whether a wage has techni-

cally been "earned," but rather what rights has the debtor ascended to at the time the petition was filed? Where the right to receive wages in the future is coupled with an interest at the time the petition is filed, it is clear that the right to those wages belongs to the trustee.

*Id.*

This case is strikingly similar to the facts in *Scanlon.* At the time Tully filed bankruptcy, he had satisfied his obligations under the contract. Accordingly, he had a right to the commission under the contract. This right to the commission arose out of the original sales contract and commission authorization agreement. The closing of escrow merely dictated the time for payment of the commission. The condition that the commission not be paid until escrow was consummated was a standard provision pre-printed on the commission authorization agreement. The bankruptcy court made a finding that this was a standard commission agreement. As this is the industry standard, a reversal of the bankruptcy court would allow brokers to file bankruptcy petitions immediately before the close of escrow and have the commission deemed a post-petition earning, not property of the estate. This would clearly circumvent the intent of the Bankruptcy Code. Tully's commission was not earned in the three weeks post-petition, but rather the five years preceding Tully's bankruptcy. All obligations necessary to earn the commission occurred pre-petition. The bankruptcy court properly determined the commission to be a pre-petition asset of the estate.

## V. CONCLUSION

Tully performed all acts necessary to earn the commission pre-petition. As such, the commission is a pre-petition asset and is property of the estate. The bankruptcy court properly ordered that the commission be turned over to the trustee. **WE AFFIRM.**