In re Dorothea Ann **MELLOR**, a/k/a D.A. Mellor, a/k/a Dee Ann Mellor, a/k/a D.A. Hilley, a/k/a Dee Ann Hilley, Debtor.

**LAW OFFICE OF LARRY A. HENNING**, Plaintiff–Appellee,

v.

Dorothea Ann **MELLOR**, Defendant– Appellant.

No. 97–B–1572.

United States District Court, D. Colorado.

Nov. 2, 1998.

---

Paul D. Rubner, Thomas C. Kearns, Rubner & Kutner, P.C., Denver, CO, for Deft/Respondent.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant–Appellant, Dorothea Ann Mellor ("Ms. Mellor"), appeals from the orders and final judgment denying her discharge pursuant to 11 U.S.C. § 727(a)(4) (1997), entered in the United States Bankruptcy Court for the District of Colorado by Chief Bankruptcy Judge Charles E. Matheson. The issues are adequately briefed and the parties presented oral argument on October 30, 1998. Jurisdiction exists pursuant to 28 U.S.C. § 158. I affirm for the reasons set forth below.

## I. BACKGROUND

The following facts are undisputed, unless otherwise noted. Ms. Mellor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on February 8, 1996. (Plf.'s Exs. S–1—S–4, R. Vol. IV.) Contemporaneously with the filing of her voluntary petition, Ms. Mellor also filed a Statement of Financial Affairs, Summary of Schedules, and Schedules A–J. (Plf.'s Exs. S–5—S–10, S–12—S–27, R. Vol. IV.) Although completed by Robert L. Eckelberry ("Mr. Eckelberry"), Ms. Mellor's attorney at the time, Ms. Mellor signed declarations attesting to the truth and accuracy of information provided. (Plf.'s Exs. S–11, S–28, R. Vol. IV.)

Plaintiff–Appellee, Law Office of Larry A. Henning ("Mr. Henning"), filed a "Complaint and Objection to Discharge" on July 26, 1996. (Doc. 1, R. Vol.1.) Mr. Henning sought denial of Ms. Mellor's discharge, alleging, *inter alia*, that Ms. Mellor: (1) concealed or failed to keep or preserve financial records from which her financial condition or business transactions might be ascertained, in violation of 11 U.S.C. § 727(a)(3); and (2) knowingly and fraudulently made a false oath or account of her property, in violation of 11 U.S.C. § 727(a)(4)(A). Ms. Mellor, through Mr. Eckelberry, filed an answer generally

Kurt E. Walberg, Law Office of Larry A. Henning, Denver, CO, for Plaintiff/Appellee.

denying Mr. Henning's allegations. (Doc. 2, R. Vol.I.)

Mr. Henning filed a discovery plan on October 1, 1996, noting that "Counsel for the Defendant has declined to meaningfully participate in the preparation of a discovery plan." (Doc. 4, R. Vol.I.) A "Scheduling Order," entered October 7, 1996, established November 27, 1996 as the general discovery cut-off date as well as the deadline for pre-trial disclosure of witnesses and exhibits to be presented at trial, scheduled for January 22, 1997. (Doc. 6, R. Vol.I.) On November 13, 1996, Ms. Mellor filed a notice of substitution of counsel, substituting Jerry C. Connell ("Mr. Connell") as her counsel in place of Mr. Eckelberry. (Doc. 8, R. Vol.I.) Only Mr. Henning filed his pretrial disclosures on or before November 27, 1996.

On December 9, 1996, the Bankruptcy Court entered a "Scheduling Order and Notice of Trial" establishing: (1) January 17, 1997 as the new general discovery cut-off date; (2) March 14, 1997 as the new deadline for pretrial disclosure of witnesses and exhibits; and (3) April 16, 1997 as the commencement of trial. (Doc. 27, R. Vol. I .) Again, only Mr. Henning filed his pretrial disclosures on or before the deadline of March 14, 1997.

On April 14, 1997, two days prior to trial, Mr. Connell filed a motion to continue the trial date on behalf of Ms. Mellor, stating that Ms. Mellor had undergone major knee replacement surgery on April 8, 1997 as a result of an injury that occurred in February 1997. (Doc. 45, R. Vol.I.) The Bankruptcy Court granted Ms. Mellor's motion and reset the trial for July 11, 1997. (Doc. 47, R. Vol.I.)

On April 16, 1997, Mr. Connell moved for leave to withdraw as counsel of record for Ms. Mellor, citing "a deep and fundamental conflict between Client and Attorney as to the manner and nature of how to proceed in the defense in the within action." (Doc. 48, R. Vol.I.) Mr. Connell served Ms. Mellor with a "Notification of Withdrawal Certificate" stating that Ms. Mellor had "the obligation to prepare for all trials and hearings which are or may be scheduled, or of hiring other counsel to do so" and erroneously identifying July 10, 1997 as the trial date. (Doc. 49, R. Vol.I.) Over Mr. Henning's objection, the Bankruptcy Judge permitted the withdrawal of Mr. Connell on May 2, 1997.

Approximately six weeks later and three weeks before trial, on June 19, 1997, Paul D. Rubner and Thomas C. Kearns entered their appearance on behalf of Ms. Mellor. (Doc. 54, R. Vol.I.) They continue to serve as her counsel in this matter and are attorneys of record for this appeal. Contemporaneously with their entry of appearance, they filed a motion to modify the scheduling order and tendered proposed witness and exhibit lists on behalf of Ms. Mellor. (Doc. 55, R. Vol.I.) In the motion to modify the scheduling order, Ms. Mellor's new counsel argued that, although trial would commence in three weeks, modification of the amended scheduling order would not prejudice Mr. Henning because the witnesses they sought to call on behalf of Ms. Mellor during her case in chief had already been endorsed by Mr. Henning. (Doc. 55 ¶ 6.) Mr. Henning objected to modification of the scheduling order. (Doc. 55 ¶ 8.) By written order entered June 23, 1996, the Bankruptcy Judge denied Ms. Mellor's motion to modify the amended scheduling order, stating "The request is not timely and no grounds have been stated to excuse the Defendant from meeting the scheduling deadline in this case." (Doc. 57, R. Vol.I.)

On July 1, 1997, Ms. Mellor filed a motion for reconsideration of the denial, citing Ms. Mellor's ongoing health problems and her reliance on Mr. Connell, who "[i]nexplicably . . . failed to designate witnesses and exhibits prior to the March 14, 1997 deadline," as evidence of good cause for modification of the amended scheduling order. (Doc. 58, R. Vol. I.) On July 8, 1998, the Bankruptcy Judge entered an order deferring ruling on the motion for reconsideration, which order states, in relevant part:

Trial in this case is set for July 11, 1997. The Defendant, Dorothea Ann Mellor ("Defendant"), failed to comply with this Court's scheduling orders in connection with this case as concerns the designation of witnesses and exhibits for trial. On June 19, 1997, Defendant filed a motion to modify this Court's scheduling order to

allow the Defendant to endorse witnesses for testimony at trial based on the Plaintiff's list of witnesses and Rule 26(a)(3) disclosures previously filed by the Plaintiff in this case. The Court denied that motion. . . .

The Defendant has now filed a motion asking that this Court reconsider its order denying the prior motion. In doing so, Defendant represents that in connection with the prosecution of this case, she relied upon the actions of her attorneys to sufficiently prepare the defense of the adversary proceeding. She represents that the failure of her former counsel to designate witnesses and exhibits prior to the March 14, 1997 deadline set by this court was "inexplicable." Defendant further represents that she was unfamiliar with the requirements set by this Court's prior orders.

This adversary proceeding has been hotly and fervently contested. The Plaintiff's efforts to engage in discovery in this case have been actively opposed by the Defendant and this Court has had numerous hearings to resolve discovery disputes.

As this matter proceeded toward trial, there were indications from Defendant's counsel that his preparation for trial was being made difficult by, if not a lack of cooperation of the Defendant, at least differences of opinion concerning how the case should be handled. Ultimately, it led to the withdrawal from this case of Mr. Connell with the representation that he had irreconcilable conflicts with his client. That motion was filed on April 15, 1997 and was granted by this Court's order of May 2, 1997. It was not until June 19 that present counsel for the Defendant entered an appearance in the case. The Court is not advised as to why there was a six week delay on the part of the Defendant in obtaining new counsel.

The Defendant's prior counsel was intimately involved in the defense of this case. He participated in discovery and appeared frequently before this Court in connection with disputes about discovery and the scheduling in this case. There is nothing in the record to indicate that he was inattentive.

This Court will defer ruling on the Defendant's motion for reconsideration and will take it up at the time set for the commencement of trial in this case. This is done in light of the late date at which the motion for reconsideration has been tendered to the Court. It appears that the Defendant will suffer no prejudice by this delay in the resolution of the motion inasmuch as she does not seek to endorse new witnesses or new exhibits but simply proceed through the witnesses and exhibits already endorsed by the Plaintiff. The Court takes this step because the Court is unwilling to grant the motion based solely on the representations of the Defendant concerning her lack of knowledge about the requirements imposed by this Court's scheduling orders.

(Doc. 59 at 1–3, R. Vol. I.) Before trial commenced on July 11, 1997, the Bankruptcy Judge denied the motion for reconsideration:

The Court: Well, my problem with the motion is that the representation is that Ms. Mellor was not aware of the deadlines. But her attorney was certainly aware of the deadlines.

If there's going to be some argument of excusable neglect on behalf of the defendant as to why exhibits and witnesses were not timely and properly disclosed, then I need to hear it other than from the representation that Ms. Mellow [sic] wasn't aware of it, because I don't think that makes any difference.

Mr. Kearns: Okay. And I guess I'm not— are you saying that we need to have an affidavit from Ms. Mellor's former attorney or—

The Court: You need the attorney in here to tell me why he didn't attend to business, if that's the allegation. If the allegation is that he failed to do that, that's not an allegation. He failed to do that. The question is why. Was it excusable? And just telling me that Ms. Mellor was not aware of those dates doesn't make it excusable.

Mr. Kearns: Because she was represented, Your Honor?

The Court: Because she was represented by an attorney who was regularly before me and who indicated from everything that was going on · in this case that he was certainly attentive to what was happening in this case.

Mr. Kearns: Your Honor, would the Court entertain testimony from former counsel on that issue if we can get ahold of him?

The Court: The evidence has to come through him, and absent some, you know, offer in front of the Court, I'm not going to tell you what I'll entertain or not entertain. But I think it's a very late date to address that kind of an issue, Mr. Kearns.

Mr. Kearns: And I agree with you, Your Honor. I simply brought the issue up because of the extreme prejudice to Ms. Mellor in not even allowing her to testify essentially in her own defense beyond the scope of the examination of Mr. Walberg, at the minimum, plus the other witnesses whom the plaintiff listed and is aware of. ·

The Court: I understand. I don't know what was in the minds of counsel—in the mind of counsel at the time that he was handling this case or what the cause was for the failure to file those at that time.

Mr. Kearns: Okay. And we'll try to address that issue this morning, Your Honor.

(R. at 7–9, Vol. II.) The issue was not raised again until this appeal. During the trial, the Bankruptcy Judge did not permit Ms. Mellor's counsel to exceed the scope of direct examination when cross-examining witnesses endorsed and called by Mr. Henning. Nor was Ms. Mellor allowed to present· her own case in chief.

At the conclusion of the trial, the Bankruptcy Judge entered oral conclusions of law and findings of fact favorable to Mr. Henning. The Bankruptcy Judge found Ms. Mellor's testimony lacking in credibility, inconsistent, and evasive. (R. at 214, Vol. I.) He also found that Ms. Mellor knowingly and fraudulently made a false oath or account of her property, in violation of 11 U.S.C. § 727(a)(4)(A), by failing to disclose a bank account, an automobile, pending real estate contracts on which commissions had accrued, and monetary payments made to third parties prior to the filing of her petition. By written order dated July 14, 1997, the Bankruptcy Judge denied discharge pursuant to 11 U.S.C. § 727(a)(4) and directed the entry of judgment in favor of Mr. Henning. Judgment entered on July 14, 1997. Ms. Mellor commenced this appeal on July 18, 1997. The appeal became at issue on November 7, 1997.

## II. ISSUES ON APPEAL

Ms. Mellor presents three issues on appeal. First, she contends that the Bankruptcy Judge abused his discretion by denying her motion to amend the scheduling order. Second, Ms. Mellor argues that the Bankruptcy Judge erred in concluding that certain real estate contracts constitute property of the debtor's estate that must be disclosed. Third, Ms. Mellor avers that the Bankruptcy Judge's findings of fact are clearly erroneous.

## III. LEGAL STANDARDS OF REVIEW

■ In reviewing a Bankruptcy Court's decision, the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. Fed.R.Bankr.P. 8013. I review the Bankruptcy Court's denial of a motion to modify a scheduling order for abuse of discretion. *Burks v. Oklahoma Publishing Co.*, 81 F.3d 975, 979 (10th Cir.1996). I review factual findings under the clearly erroneous standard while conclusions of law are reviewed *de novo*. *In re Unioil*, 948 F.2d 678, 681 (10th Cir.1991). "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R.Bankr.P. 8013. "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . ." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Finally, the Bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor to effectuate

the "fresh start" ethos underlying the code. *In re Brown*, 108 F.3d 1290, 1292 (10th Cir. 1997) (citing *In re Adlman*, 541 F.2d 999, 1003 (2d Cir.1976)).

## IV. ANALYSIS OF ISSUES ON APPEAL

### a. Whether the Bankruptcy Court Abused its Discretion by Denying Defendant–Appellant's Motion to Modify the Scheduling Order

 Federal Rule of Civil Procedure 16(b), made applicable to this adversary proceeding by Fed.R.Bankr.P. 7016, gives bankruptcy courts wide latitude in entering scheduling orders. Rule 16(b) also provides that such orders shall not be modified "except upon a showing of good cause and by leave of the district judge." Fed.R.Civ.P. 16(b) I review the Bankruptcy Court's refusal to modify a scheduling order for abuse of discretion. *Burks v. Oklahoma Publishing Co.*, 81 F.3d 975, 979 (10th Cir.1996). In the context of a decision to exclude a witness not listed in a pretrial order, four factors to determine whether the district court abused its discretion in the Tenth Circuit:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified;
>
> (2) the ability of that party to cure the prejudice;
>
> (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in court; and
>
> (4) bad faith or willfulness in failing to comply with the court's order.

*Smith v. Ford Motor Co.*, 626 F.2d 784, 797 (10th Cir.1980) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–905 (3d Cir.1977)). Although the *Smith* factors address the modification of a final pretrial order, the Tenth Circuit Court of Appeals recently applied the *Smith* factors to a district court's decision to modify a scheduling order before a final pretrial order had been entered. *See Burks v. Oklahoma Publishing Co.*, 81 F.3d 975, 979 n. 1 (10th Cir.1996). Accordingly, the four *Smith* factors apply in this case.

The first factor weighs in favor of Mr. Henning. Ms. Mellor's attempt to endorse witnesses and exhibits three weeks before trial, although not surprising considering the "fervent" nature of the litigation and her demonstrated unwillingness to participate in discovery, (Doc. 59 at 2, R. Vol. I), certainly prejudiced Mr. Henning and his counsel's preparation for trial. Ms. Mellor's contention that no prejudice occurred because she endorsed only witnesses and exhibits already endorsed by Mr. Henning is unavailing. The proposed testimony would have injected new testimony and issues into the trial, complicating matters.

The second factor, however, weighs slightly in favor of Ms. Mellor. Any surprise or prejudice could have been cured during the three weeks remaining before trial by re-opening discovery. The Bankruptcy Judge could have allowed Mr. Henning to conduct informal interviews, formal depositions, and designate rebuttal witnesses, if necessary. Such curative measures, however, would not have come without attendant inconvenience and cost.

The third and fourth factors weigh heavily in favor of Mr. Henning. The expansion of the trial's scope may have caused a postponement of the trial, which had already been continued once on Ms. Mellor's request. Considering the history of the case, reopening discovery would have likely required the resolution of more discovery disputes. Moreover, and as noted by the Bankruptcy Judge, the record indicates that Ms. Mellor may have acted with bad faith or willfulness in failing to comply with court imposed deadlines. (Doc. 59 at 2, R. Vol. I; R. at 213, Vol. II; R. at 7–8, Vol. V.) Even if not willful, Ms. Mellor's failure to comply with clearly established deadlines constitutes more than simple negligence. In consideration of all the *Smith* factors discussed above, I hold that the Bankruptcy Court did not abuse its discretion in refusing to modify the scheduling order or refusing to allow Ms. Mellor to designate witness and exhibit lists three weeks before trial.

### b. Whether the Bankruptcy Court Erred in Concluding that Certain Real Estate Contracts Constitute Property of the Debtor's Estate

 Ms. Mellor also argues that the Bankruptcy Judge erred in concluding that certain

real estate contracts constitute property of the debtor's estate that must be disclosed by the debtor. Initially, I express significant doubt as to whether the Bankruptcy Judge made the conclusion of law suggested by Ms. Mellor. He held, in relevant part:

The listing contracts were not disclosed. That's an interesting proposition. I would venture to say that most any bankruptcy attorney, if asked, would say no, you don't put those things down unless they really stop to reflect on it, and then I suppose they would say, well, you might as well because they don't have intrinsic value. You can't sell them. You can't transfer them. There's nothing that's—there's no value that's accrued to them on the date that the case is filed. If by reason of post-petition ongoing activities by the debtor a listing contract is obtained, or a sale contract is obtained pursuant to that listing, and if that closes, then there may be a commission. But the listing contract in and of itself, even though they are valuable to a realtor to have, is I would suggest, at best an executory contract. It is at best a personal services contract that the trustee can't assume anyway. And the prospects of value flowing to the estate just because of that personal—of that listing contract are virtually zero. It is technically an agreement held by a debtor that the debtor probably out to disclose.

But pending contracts on the date that the bankruptcy case was filed are something else. The problem I guess that I have as far as the 727 case is concerned is that while I have some testimony about these contracts, in reality, I don't have any of the contracts in front of me, and I don't know exactly what the terms were of those contracts, and under what circumstances the debtor was going to receive payments. Usually, in all of the contingencies that the debtor talked about with respect to these contracts were all contingencies that required performance by someone else, not by her, that is, it was that there needed to be financing, or that the buyer needed to sell a house, but essentially the debtor's services had been performed. She found a buyer at the price, the seller was ready, willing and able to sell. And if that closes,

the money is hers. The commissions are hers.

If that in fact is the nature of the contract, then it seems to me that that was a right that did have value on the date the case was filed in which the estate may have some interest, but I don't know that because I don't have the contracts, so I can't really tell. I can't really tell whether these were assets of some kind that needed to be disclosed or not.

(R. at 209–211, Vol. II.) The Bankruptcy Judge concluded that Ms. Mellor failed to disclose "the pending contracts on which commissions were accruing." (R. at 214, Vol. II.) This is a finding of fact that is not disputed.

Even if the Bankruptcy Judge had concluded that the Bankruptcy Code required a real estate agent seeking protection under Chapter 7 to disclose pending real estate contracts on which commissions had accrued, I would find no error. Several courts have concluded that such contracts constitute property of the bankruptcy estate under 11 U.S.C. § 541. *See, e.g., In re Tully*, 202 B.R. 481, 484–485 (9th Cir. BAP 1996); *In re Pauley & McDonald, Inc.*, 215 B.R. 37, 44 (Bankr.D.Ariz.1996); *In re Taylor & Campaigne, Inc.*, 149 B.R. 993, 996 (Bankr. M.D.Fla.1993) (unpaid commissions resulting from pre-petition contracts constitute property of the estate), *aff'd*, 157 B.R. 493 (M.D.Fla. 1993); *In re Bob Hamilton Real Estate, Inc.*, 138 B.R. 301, 302 (Bankr.M.D.Fla.1992) (fee earned pre-petition at the time agent locates a purchaser ready, willing, and able to buy the property in question on terms acceptable to the seller) (citing *In re Charter Co.*, 52 B.R. 267 (Bankr.M.D.Fla.1985)); *see also In re J.M. Fields, Inc.*, 22 B.R. 861, 864 (Bankr. S.D.N.Y.1982) (discussing executory contracts).

In her opening brief, Ms. Mellor cites *In re Zahneis*, 78 B.R. 504, 505 (Bankr.S.D.Ohio 1987), for the proposition that "real estate listing contracts which were executed pre-petition, but which close post-petition are not property of the estate." (Appellant's Opening Brf. at 13.) Ms. Mellor, however, misreads *In re Zahneis*, which involved a real

estate transaction in which only the listing of the property occurred pre-petition; the execution of the sales contract, negotiations of the sales contract, and closing of escrow occurred post-petition. *See In re Tully*, 202 B.R. at 484 (distinguishing *In re Zahneis* on factual grounds). Accordingly, I find no error in the Bankruptcy Court's finding that sales contracts negotiated and executed pre-petition constitute property of her estate that should have been disclosed. Lastly with respect to this issue, I note that, even if the Bankruptcy Court erred in making this conclusion of law, the court's judgment is amply supported by Ms. Mellor's omissions of other types of property.

### c. Whether the Bankruptcy Court's Findings of Fact Are Clearly Erroneous

▮ Ms. Mellor lastly contends that the Bankruptcy Judge's findings of fact are clearly erroneous. Specifically, she argues that any omissions were the result of mistake or inadvertence, rather than knowing and fraudulent intent. She further argues that any omissions are *de minimis*. I disagree.

▮ The Bankruptcy Judge's findings of fact are amply supported by the record. Notably, Ms. Mellor conceded that she failed to disclose a bank account from which she had made several substantial transactions in the three months prior to the filing of her petition. (R. at 56–60, Vol. II.) She also failed to disclose an automobile leased by her husband, but driven by her, as property held for another person. (R. at 68–70, Vol. II.) Although her husband leased the automobile, the vanity license plates indicated she used the vehicle ("D's BMW"), she made lease payments, she made insurance payments, and the insurance was under her name. (R. at 69, Vol. II.) These omissions are hardly *de minimis* and would, by themselves, support the Bankruptcy Court's judgment. Even if such omissions were *de minimis*, a debtor's failure to disclose assets or pre-petition transactions in bankruptcy pleadings based on his or her opinion that they are worthless or immaterial is not a valid defense under § 727(a)(4). *In re Calder*, 907 F.2d 953, 956 (10th Cir.1990).

▮ The record also supports the Bankruptcy Court's finding of fraudulent intent. The Tenth Circuit Court of Appeals recently stated:

> The problem in ascertaining whether a debtor acted with fraudulent intent is difficult because, ordinarily, the debtor will be the only person able to testify directly concerning his intent and he is unlikely to state that his intent was fraudulent. Therefore, fraudulent intent may be deduced from the facts and circumstances of the case. The bankruptcy court's ultimate determination concerning fraudulent intent will not be set aside unless clearly erroneous.

*In re Calder*, 907 F.2d at 955–956 (citations omitted). Further, the greater the number of assets or transactions that are not disclosed, the greater the inference of intent to defraud. *Id.* at 956.

Applying the correct legal standard under § 727(a)(4)(A), the Bankruptcy Judge concluded that Ms. Mellor made the material false oaths willfully or with an intent to defraud. He discussed the salient evidence and inferred fraudulent intent from the facts and circumstances of the case. (R. at 207–214, Vol. II.) He found Ms. Mellor lacking in credibility and evasive. (R. at 214, Vol. II.) Of course, the Bankruptcy Judge was in the best position to assess the credibility of the witnesses of the case. Fed.R.Bankr.P. 8013.

▮ Ms. Mellor emphasizes on appeal her amendment of the insufficient pleadings before trial. As a matter of law, no inference of fraudulent intent can be drawn from an omission when the debtor promptly brings it to the court's or trustee's attention absent other evidence of fraud. *In re Brown*, 108 F.3d at 1294. Further, a debtor's voluntary filing of an amendment as soon as practicable may be accepted as evidence of the absence of the element of the fraudulent intent necessary to sustain a § 727(a)(4)(A) claim. *In re Kelly*, 135 B.R. 459, 461 (Bankr.S.D.N.Y. 1992); *In re Shebel*, 54 B.R. 199, 202–205 (Bankr.D.Vt.1985). An inference of fraud is permissible, however, when the evidence indicates that the amendment is not in fact voluntary because the amendment is offered only as a result of developments during the meeting of creditors, after the debtor "knew that the cat was out of the bag," well after

the meeting of creditors, or without adequate explanation of the reason for their initial inaccuracy. *In re Mumin*, 1998 WL 160992, *3 (Bankr.E.D.Pa.1998) (unpublished opinion) (collecting multiple cases). Further, a debtor's failure to correct all of the inconsistencies and omissions upon making allegedly curative amendments renders these efforts ineffectual. *Id.* (citing *Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir.1992), and *In re Phillips*, 187 B.R. 363, 372 (Bankr.M.D.Fla. 1995)). Here, Ms. Mellor's amendments came only after Mr. Henning questioned the veracity of her disclosure and only nine days before trial. Further, her amended Statement of Financial Affairs continues to omit the automobile and pre-petition payments to creditors. Upon an independent review of the record, I do not have a "definite and firm conviction" that the bankruptcy court erred in refusing to deny Ms. Mellor's discharge. Accordingly, I find no clear error.

Accordingly, I ORDER that:

(1) the Bankruptcy Court's order of June 23, 1997, order of July 14, 1997, and judgment of July 14, 1997 are AFFIRMED; and

(2) because I did not rely on any information affected by Plaintiff–Appellee's motion to strike, that motion is DENIED as moot.