**In re JOHN CHEZIK IMPORTS, INC. d/b/a John Chezik Honda East, Debtor.**

**Bankruptcy No. 93–41811–172.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

May 8, 1996.

---

Richard Alan Cooper, St. Louis, MO, for Debtor.

Mark A. Bertsch, Sommars & Bertsch, L.L.C., St. Louis, MO, for Operating Trustee.

Robert J. Blackwell, Operating Trustee, Blackwell & Associates, P.C., St. Louis, MO.

Jerry W. Venters, Jefferson City, MO, for Donald R. Brown.

### ORDER

JAMES J. BARTA, Chief Judge.

This matter is before the Court on the Operating Trustee's Objection to Claim 12 submitted by Donald R. Brown ("Claimant") in the case of John Chezik Imports, Inc. d/b/a/ John Chezik Honda ("Debtor"). The Trustee objected to the allowance of the claim on the grounds that the contract between the purchaser, Greig Pratt[1], Breakaway L & M ("Purchaser"), and the Debtor never closed and that there was, in fact, no sale. It was the Trustee's position that without a sale, the Claimant did not earn a commission.

The Claimant agreed that the sale did not close but contended that, under Missouri law and pursuant to an employment agreement, he earned a commission when he produced a ready, willing and able buyer for the Debtor's assets. The Claimant also contended that the possession of the dealership by an interim manager was a "closing" pursuant to the terms of the Employment Agreement and thus the Claimant's fee was earned. The matter was taken under submission by the Court after the matter was fully heard.

This is a core proceeding pursuant to Section 157(b)(2)(B) of Title 28 of the U.S.Code. The Court has jurisdiction over the parties in this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334, and Rule 9.01 (formerly Rule 29) of the Local Rules of the United States District Court for the Eastern District of Missouri. These findings and conclusions are the final determinations of the Bankruptcy Court.

This bankruptcy case was begun as an involuntary Chapter 7 proceeding on April 1, 1993. On April 12, 1993, the Debtor filed a consent to the entry of an Order for Relief and requested that the case be converted to a case under Chapter 11 of the Bankruptcy Code. On May 17, 1993, pursuant to an Order of the Court, the United States Trustee appointed Robert J. Blackwell ("Trustee") trustee in this case.

The Debtor operated as a Honda automobile dealership located in St. Peters, Missouri. The evidence established that in January of 1992 and again in June of 1992, the Debtor and the Claimant entered into an Employment Agreement whereby the Claimant was granted a six month, non-exclusive listing to assist the Debtor in the sale of the dealership. The Claimant testified at trial that he had an extensive background in the automobile business with various manufacturers and his own dealership as well as experience brokering the purchase and sale of dealerships. The Claimant also testified that he held a Missouri real estate broker's license.

In explaining how his auto dealership brokerage business operates, the Claimant testified that he lists an automobile dealership for sale, contacts people he thinks would be interested purchasers and also contacts other auto dealership brokers. It was through one of these brokers that the Purchaser was introduced to the Claimant who in turn presented the Purchaser to the Debtor. The Purchaser and Debtor executed a Transitional Management Agreement ("TMA"), **Claimant's Exhibit 3,** an Agreement of Sale of Business Assets ("Buy/Sell Agreement"), and an Addendum thereto, **Claimant's Exhibit 4.** The Buy/Sell Agreement was signed by the Purchaser and Debtor on August 14, 1992. The Agreement was contingent on the approval of the Purchaser by American Honda Motor Company. Under the terms of the Agreement, closing was to be set to occur

---

1. On the various documents submitted, this person was identified as "Greig", "Greg", and "Gregory". Greig is the spelling in letters from his attorney and on the documents incorporating GNP.

five days after such approval was given. There was no "time is of the essence" clause.

On August 17, 1992 the TMA was signed by "John Chezik Honda" and John Chezik as the Seller, and "GNP Auto Management Company" and Greig Pratt as the Buyer. The TMA was scheduled to terminate on the date of the Closing or the date of termination in the Buy/Sell Agreement. **Plaintiff's Exhibit 3.** G.N.P. Auto Management Inc. ("GNP") was incorporated by Charles H. Shaffar on August 17, 1992. Greig Pratt was listed as the President and sole director of GNP. **Plaintiff's Exhibit 8.** GNP assumed the management of the dealership under the terms of the TMA on or about September 28, 1992. **Trustee's Exhibit A.** By the terms of the TMA, GNP was to operate under the Sales and Services Agreement then in effect in favor of Debtor and the certificate of authorization issued by the Missouri Motor Vehicles Commission in favor of the Debtor. **Plaintiff's Exhibit 3.** The appointment of GNP as manager of the dealership was noticed to various interested parties. The notice identified GNP as the agent for the Debtor in anticipation of a sale of the dealership. **Trustee's Exhibit A.**

The record of the case is that the closing was scheduled to occur April 2, 1993. An involuntary petition was filed by three creditors on April 1, 1993 in response to the Bulk Sale notice that was sent to creditors pursuant to Missouri law. On April 16, 1993 the Purchaser unilaterally declared the Buy/Sell agreement void and withdrew from the contract. GNP ceased its management of the dealership and vacated the premises the same day. The Debtor then resumed management of the dealership and remained in place until the appointment of the Trustee in May, 1993.

The Claimant bases his right to a commission on two legal theories. First, the Claimant relies on the state common law principle that when a broker produces a ready, willing and able buyer a commission is earned. The Claimant contended he produced such a buyer when the Debtor and Purchaser signed the Buy/Sell Agreement. Second, under a contract theory, the Claimant argued that the Employment Agreement between the

Claimant and the Debtor specified that a commission was earned upon "closing", that the contract defined "closing" as "possession", that the Purchaser "possessed" the dealership when GNP took over as manager, and that therefore the commission was earned.

■ "Property interests are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The Claimant's interest in receiving a commission upon the sale of the Debtor's business is a state law property right.

■ Under Missouri law, generally, a broker earns a commission from the seller when he produces a buyer ready, willing, and able to buy on the terms specified by the seller, whether or not the sale is completed. *Dark v. MRO Mid–Atlantic Corporation,* 876 S.W.2d 714, 716 (Mo.App.Ct.1994) citing *Meridian Interests v. J.A. Peterson Enterprises, Inc.,* 693 S.W.2d 179, 182 (Mo.App.Ct.1985).

■ When the contract for sale is a conditional contract, the contract cannot become a binding obligation upon the parties unless and until all conditions are met. Until such conditions are met the broker has not earned a commission because the broker has not produced a ready, willing and able buyer. *Dark,* 876 S.W.2d at 717 citing *Suburban Realty Co. v. Sturgeon,* 443 S.W.2d 7 (Mo. App.Ct.1968).

■ The parties may vary the seller's duty to pay the broker's commission by express agreement within their listing contract. *Dark,* 876 S.W.2d at 716.

In the case at bar, the Court finds and concludes that, under the terms of the Employment Agreement, the parties agreed to substitute the terms of their agreement as to the payment of commission for the general provisions under Missouri common law.

The Employment Agreement, drafted by the Claimant, contains several numbered paragraphs. The Claimant referred only to paragraphs 4 and 5 in his argument.

¶ 4 *FEE* SELLER agrees that a fee shall be paid to CONSULTANT a flat fee of twenty-five thousand dollars ($25,-

000.00), whichever is greater, in full, upon closing as described in Paragraph 5 below.

¶ 5 *CLOSING* CONSULTANT shall receive reasonable notice of the closing and may be present with his attorney at closing. The CONSULTANTS fee referred to in Paragraph 4 above is payable in full to the CONSULTANT upon closing, upon occupancy, upon closing of the escrow/settlement account, or upon possession of the premises by the BUYER, the BUYER'S assignees or the BUYER'S representatives. Any money received by the SELLER other than money held in escrow account, shall be deemed a closing, and the CONSULTANT shall be paid his fee in full at that time. **Plaintiff's Exhibit 2.**

The somewhat stilted language in Paragraph 4 is the result of the Parties' handwritten strikeouts of certain phrases that were part of an originally typewritten document.

In reading the entire document, the Court finds two other paragraphs which also address payment to the Claimant.

¶ 10 When a Buy/Sell Agreement is signed by both BUYER and SELLER, an escrow agent will be appointed (First National Bank of Gladstone) to receive the deposit from the BUYER, such agent acceptable to CONSULTANT. A true copy of this agreement will be furnished to escrow agent for the purpose of making proper settlement of CONSULTANT'S fee at closing of escrow. If the buyer forfeits or fails to perform for any reason other than factory approval, the SELLER and CONSULTANT shall divide the deposit between them. Payment in full of said fees shall be a condition of close of escrow/settlement.

¶ 16 In the event that the candidate is denied by the manufacturer and the manufacturer exercises its option to buy the point in whole or partially, the employment contract will stand and CONSULTANT will be paid as per Paragraph 4 and 5 of the agreement. **Plaintiff's Exhibit 2.**

Thus the Employment Agreement expressly addressed an agreed upon payment to the Claimant in three alternative situations. First, upon the closing of the Buy/Sell Agreement, the Claimant would be entitled to $25,-000.00 under Paragraph 4 which is payable pursuant to Paragraph 5. Paragraph 5 refers to the Claimant's fee being payable upon the occurrence of various events, among them the "possession of the premises by the Buyer, the Buyer's assignees or the Buyer's representatives." This language is inconsistent with the requirement in Paragraph 4 that the fee shall be paid at "closing". The Claimant argued that the language of Paragraph 5 in essence defined such a possession as a "closing".

■ The closing of the Buy/Sell Agreement was contingent upon the receipt of Honda's approval of the Purchaser. Until such approval was given, the Buy/Sell Agreement was not enforceable against either party. *See Dark,* 876 S.W.2d at 717. The testimony and other evidence in the record support the determination that it is common in the sale of an auto dealership to have the buy/sell agreement contingent upon factory approval of the buyer and to have an interim manager, usually an entity affiliated with the buyer, while the parties await this approval. It was the Claimant's testimony that the closing of the Buy/Sell Agreement could not and should not occur prior to the receipt of factory approval.

■ Therefore, without the express agreement of the Parties, the Court will not interpret an interim event such as the retention of a pre-sale manager as a "closing" of the kind referred to in Paragraph 4.

■ By the express terms of Paragraph 5, the parties agreed to deem the receipt of money, other than the Purchaser's deposit held in an escrow account, as a "closing". However, possession of the business operation was not expressly deemed a "closing" in Paragraph 5 or elsewhere in the Agreement. Following the cannons of construction, the terms of a contract are construed narrowly against the drafter and the inclusion of terms expressly agreed to by the parties shall override ambiguous or inconsistent terms. Therefore, the Court finds and concludes that mere possession of the premises by an Interim Manager is not a "closing" under the terms of the Employment Agreement.

The second alternative situation is found at Paragraph 10. If the Purchaser forfeits or fails to perform for any reason other than factory approval, the Claimant and the Debtor would be entitled to divide the amount that was to have been deposited by the Buyer with the escrow agent. Since the parties failed to specify otherwise, the Court will presume an equal division of the deposit was intended.

In the third situation described in Paragraph 16, if approval of the Purchaser should be denied by Honda, and Honda should exercise its option to buy in whole or in part, the Claimant would be entitled to the full commission payable as per Paragraphs 4 and 5.

 Under Paragraphs 4, 5, and 16 of the Employment Agreement, the payment to the Claimant is in the nature of a commission for effecting a sale of the Debtor's business. However, the distributions to be made under Paragraph 10 are in the nature of liquidated contract damages to both the Claimant and the Debtor as compensation for the Purchaser's failure to perform. These payments to the Claimant and the Debtor are to be funded by the Purchaser's deposit with the escrow agent, not by the Debtor.

The Court finds and concludes that under the facts of this case, the Claimant did not earn a commission pursuant to the terms of Paragraphs 4, 5, or 16 of the Employment Agreement. The sale did not close and the factory did not exercise its option to purchase. The testimony and other evidence in the record support the finding that the Purchaser's withdrawal from the contract upon its unilateral declaration that the Buy/Sell Agreement was void was the reason for the failure of the Buy/Sell Agreement. This is the situation expressly addressed by Paragraph 10 of the Employment Agreement.

The Court finds and concludes that any amounts owing to the Claimant under the terms of the Employment Agreement are governed by the terms of Paragraph 10 of that agreement. Neither the Debtor nor this estate is otherwise liable to the Claimant for any damages caused by the Purchaser's withdrawal from the Buy/Sell Agreement.

IT IS ORDERED, that the Trustee's objection to Claim No. 12 of Donald R. Brown is SUSTAINED, and the claim is not otherwise allowed to share in the distribution of the assets of this bankruptcy estate. No further determination of the extent of the Claimant's interest in the escrow deposit can be made here because the issue has not been fully argued on the record. The Parties are directed to attempt to resolve this issue by agreement.