**In re Janet Lynn PARSONS, Debtor.**

**Bankruptcy No. 00–60323.**

United States Bankruptcy Court,
W.D. Missouri,
Southern Division.

Aug. 30, 2000.

Fred C. Moon, Moon & Plaster, Springfield, MO, for trustee.

Lee J. Viorel, Husch & Eppenberger, Springfield, MO, for Union Planters Bank.

Jonathan A. Margolies, McDowell, Rice, Smith & Gaar, Kansas City, MO, for Respondent.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

The Chapter 7 trustee and creditor Union Planters Bank (Union) objected to debtor Janet Lynn Parsons' claim of exemption for 75 percent of real estate commissions earned pre-petition and paid post-petition. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## ISSUES PRESENTED

(1) The Independent Contractor Agreement between the REMAX, real estate broker, and Janet Parsons, REMAX's agent, provides that REMAX would receive a 5 percent fee for each sales contract negotiated by Parsons or her team. In addition, the Agreement provides that the broker will retain from future commission checks payable to the agent sums past due for other services provided by the broker. Parsons owed REMAX $22,992.52 when she filed this petition. REMAX owed Parsons' agency the sum of $61,884.89 for commissions earned, but not yet paid. REMAX set off the sum of $22,992.52 and paid Parsons a total of $38,-892.37. The Bankruptcy Code provides that a creditor can set off a pre-petition debt against a pre-petition obligation as long as the debts are mutual. Was REMAX entitled to offset its debt against its obligation to Parsons after she filed this bankruptcy petition?

(2) A bankruptcy estate is comprised of all property in which a debtor has a legal or equitable interest on the date the bankruptcy petition is filed. Parsons contends that she and/or her employees provided some services to the purchasers post-petition, such as arranging for inspections and repairs, though the purchasers were all produced pre-petition. Missouri law provides that the right to a real estate commission is earned when a broker or its agent produces a buyer ready, willing, and able to buy on terms specified by the seller, even if the sale is never completed. Parsons claims the work done post-petition was necessary to the closing, therefore, the commissions are not property of the estate. Does the fact that some effort is expended after a real estate contract is signed alter the general rule that the com-

mission is earned when the contract is signed?

(3) The Bankruptcy Code excepts from the bankruptcy estate post-petition earnings from personal services. Parsons stated that all of the members of her team participated in negotiating and closing the real estate sales contracts at issue here. Even if some or all of the earnings were post-petition, must a debtor personally perform the services?

(4) Parsons is a real estate agent who employs five other individuals. She or her other employees negotiated 15 real estate sales contracts that were pending closing on the date of her bankruptcy petition. Those contracts generated $38,892.37 in net commissions to the agency. Missouri law allows a debtor to exempt 75 percent of commissions earned from personal services. Is Parsons allowed to claim this exemption as to the $38,892.37.

## DECISION

(1) The obligation that REMAX owed to Parsons and the obligation that Parsons owed to REMAX were mutual pre-petition obligations. REMAX was, therefore, entitled to offset its obligation and remit to Parsons net commissions.

(2) Real estate sales commissions are earned when an agent produces a buyer ready, willing, and able to buy on terms specified by the seller, even if the sale is never completed, unless the real estate sales contract provides otherwise. No evidence was admitted that the real estate sales contracts provided otherwise, therefore, the sales commissions at issue are property of the bankruptcy estate.

(3) Only post-petition earnings from a debtor's personal services are exempt from the bankruptcy estate. Parsons did not personally provide the post-petition services that could arguably have resulted in the commissions.

(4) The Missouri wage exemption statute is applicable only to compensation paid or payable for personal services. Parsons did not personally perform all of the services that resulted in the commissions, therefore, she is not entitled to exempt 75 percent of the commissions paid to her agency. She is, instead, allowed to exempt 9.7 percent of the commissions earned by her team, as that figure represents compensation for her personal services.

## FACTUAL BACKGROUND

In 1993, Janet Parsons, a licensed real estate agent, entered into an Independent Contractor Agreement (the Agreement) with RE/MAX House of Brokers.[1] Under the Agreement Ms. Parsons is obligated to pay to REMAX a monthly administrative expense of approximately $850.00 to cover rent, office overhead, furniture, utilities, telephone bills, secretarial expenses, janitorial services, and other administrative expenses. In addition, Ms. Parsons agreed to pay REMAX a Broker Service Fee of five percent of all earned commissions, a monthly fee of $70.00 for regional institutional promotions, an annual membership fee of $300.00, and $25.00 from each commission due for Errors and Omissions Insurance. Ms. Parsons testified that she could also purchase other services, such as advertising, from REMAX on an at-will basis. Pursuant to the Agreement, the Broker Service Fee is deducted from each earned commission at the time payment is made. Ms. Parsons stated that she had the option of having REMAX deduct any other sums owed to REMAX from the commission check, or she could pay that amount separately. The commission check is apparently made payable to Janet Parsons, but she testified that the commissions are actually earned by the "Janet Parsons Team," which includes five other employees in addition to herself. On March 6, 2000, Ms. Parsons filed this Chapter 7 case. At the time of filing Ms. Parsons and/or her sales forces

1. Debtor's Ex. A.

had fifteen sales contracts awaiting closings. These fifteen sales generated sales' commissions in the amount of $61,884.89.

With two exceptions, all commissions paid were for sales that closed by the end of March, 2000. The remaining two commissions, totaling $11,220, were for sales that closed on April 14, 2000, and April 17, 2000.[2] REMAX claimed that Ms. Parsons owed it the sum of $22,992.52 for prepetition services, so it set off that amount against the commission checks. As a result, Ms. Parsons admits that she received the sum of $38,892.37 from REMAX postpetition. Parsons testified that net commission checks from REMAX are deposited in a checking account at Great Southern Bank. That same account is used to pay the expenses of operating the business, including salaries and commissions to the employees, debts owed to REMAX, advertising costs, payroll expenses, and installment debt for computers. Both Ms. Parsons and her business manager are signators on the account.

On her bankruptcy schedules, Ms. Parsons claimed as exempt 75 percent of the $38,892.37 in commissions generated prepetition through the efforts of all of her employees.[3] According to her bankruptcy schedules, Ms. Parsons claims that her monthly income from the business is $4,946.33.[4] She testified that she is holding the sum of $9,723.09 in a new savings account for payment to the trustee, if this Court finds that the commissions were earned pre-petition. Ms. Parsons did not, however, inform the trustee prior to the hearing that she was holding this sum.

Both Union Planters Bank, a judgment creditor with an unsecured claim in the amount of $331,802.00, and the Chapter 7 trustee objected to this claim of exemption. Union makes two arguments. It first argues that Ms. Parsons did not personally

earn the commissions, therefore, they do not come within the garnishment exception under state law. It next argues that the commissions do not meet the definition of earnings until after the expenses of operating the business are deducted. The trustee echos Union's arguments and adds one of his own. He claims that REMAX had no right to offset the sum of $22,992.52 from the total commissions in the amount of $61,884.89.

Ms. Parsons argues that it is controlling precedent in the Eighth Circuit that gross commissions are subject to Missouri's wage exemption statute. She also claims that those contracts would not have closed had her team not worked on them postpetition, therefore, they are not property of the estate.

I will first address the issue of whether REMAX had a right to set off the amounts owed to it by Ms. Parsons' agency from the commission payments. I will next address the issue of when real estate sales commissions are earned. I will then address the exemption issue.

## DISCUSSION

### A. Setoff

■ The Bankruptcy Code (the Code) permits a creditor to set off a pre-petition debt against a pre-petition obligation with certain exceptions, as long as the debts are mutual:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor

---

**2.** Trustee's Ex. E.

**3.** Doc. # 1, Schedule C.

**4.** *Id.* at Schedule I and J $55,833.33—regular monthly income from business—minus $50,-887.00—regular monthly expenses from operation of business—equals $4,946.33 paid to Ms. Parsons each month as take-home pay.

484

that arose before the commencement of the case.[5]

The exceptions are not relevant here, as no party disputes the fact that Ms. Parsons did owe REMAX for services it provided to her agency, and REMAX was obligated to remit sales commissions to her after deducting its fee. I, find, therefore, that the debts were mutual, that they were all incurred pre-petition, and that REMAX had a right to set off its debt against its obligation to Ms. Parsons. As a result of this finding, I find that the amount of the net commission at issue here is $38,892.37.

## B. EARNED SALES COMMISSIONS

■ The filing of a bankruptcy case creates an estate that includes of all the property in which a debtor has a legal or equitable interest:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:

(1) Except as provided in subsection (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.[6]

But, the Code also excepts from the estate property in the form of post-petition earnings from a debtor's personal services:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an

individual debtor after the commencement of the case.[7]

Thus, the commissions are property of the estate if Ms. Parsons had a legal or equitable right to payment pre-petition, and the commissions are excluded from the estate if they were earned post-petition from Ms. Parsons personal services.

■ In Missouri, the general rule is that a real estate commission is earned when either the broker, or an agent of the broker, produces a buyer ready, willing, and able to buy on terms specified by the seller, even if the sale is never completed.[8] Counsel for Ms. Parsons argued that Ms. Parsons is a licenced agent, not a broker, and that REMAX is the broker in this case. That distinction is not relevant to the issues in this case. Whether REMAX earned the commissions and remitted the balance, after deducting its fee, to Ms. Parsons, or whether Ms. Parsons earned the commissions as REMAX's agent, the issue is when did Ms. Parsons, or her agency, obtain a legal or equitable right to payment of some portion of the commissions. As the court agreed in Dark v. MRO Mid–Atlantic Corporation, a sale "includes a contract to transfer property rights, not just the actual transfer of property rights,"[9] unless the contract itself makes the commission contingent upon a closing. Ms. Parsons testified at length as to the tasks she and her team performed after the sales contracts were signed on the 15 sales at issue here. These included, for example, arranging for inspections and financing, and scheduling the closing itself. But, the sales contracts do not specifically make the payment of the commission contingent on closing. And, all of these contracts did close. This situation is analogous to that in Tully v. Taxel (In re

---

**5.** 11 U.S.C. § 553.

**6.** 11 U.S.C. § 541(a)(1).

**7.** Id. at § 541(a)(6).

**8.** Dark v. MRO Mid–Atlantic Corp., 876 S.W.2d 714, 716 (Mo.Ct.App.1994); Malone v.

Johnson, 866 S.W.2d 935, 940 (Mo.Ct.App. 1993); Marrs v. Twitty, 635 S.W.2d 374, 376 (Mo.Ct.App.1982); E.A. Mabes and Co. v. Fishman., 284 S.W.2d 21, 26 (Mo.Ct.App. 1955).

**9.** 876 S.W.2d at 716.

*Tully*).[10] In *Tully*, the debtor claimed he, and not the Chapter 7 trustee, was entitled to funds held in an escrow account from a real estate transaction that began pre-petition and closed post-petition.[11] Both the bankruptcy court and the Bankruptcy Appellate Panel disagreed, holding that the commission was earned pre-petition because all of the acts necessary to earn it were rooted in the pre-bankruptcy past.[12] The general rule in California, like the general rule is Missouri, is that a real estate commission is earned when a broker, or its agent, locates a buyer who is ready, willing, and able to buy the property on terms acceptable to the seller, even though the actual closing takes place post-petition.[13] The court cautioned that holding otherwise would circumvent an industry standard and the intent of the Code:

> [A] reversal of the bankruptcy court would allow brokers to file bankruptcy petitions immediately before the close of escrow and have the commission deemed a post-petition earning, not property of the estate. This would clearly circumvent the intent of the Bankruptcy Code.... All obligations necessary to earn the commission occurred pre-petition.[14]

I, therefore, find that Ms. Parsons' legal right to the commission from these 15 sales, as REMAX's agent, arose when either she or a member of her team obtained sales contracts from buyers ready, willing, and able to buy on terms agreed to by the owners.[15] Since all of these contracts were executed pre-petition, the commissions earned therefrom are property of Ms. Parsons' bankruptcy estate.

As to Ms. Parsons' argument that the commissions are excluded from her bankruptcy estate because they represent post-petition earnings, I find that she not only failed to prove an essential element for that argument to prevail, she actually testified contrary to that essential element. Based on the testimony of Ms. Parsons and two of her employees, the commissions were earned through the efforts of all of the members of Ms. Parsons' team. The Code excludes post-petition earnings if those earnings represent "earnings from services performed by an individual debtor after the commencement of the case."[16] Since there is no evidence as to the portion of the commissions representing Ms. Parsons' own post-petition efforts, she cannot exclude the commissions from her bankruptcy estate.

## C. COMMISSION EXEMPTION

A Chapter 7 bankruptcy debtor may exempt certain property from the bankruptcy estate.[17] The Code provides one exemption scheme in section 522(d),[18] however, it also allows a state to opt out of this scheme and establish its own.[19] Missouri chose to opt out and allows debtors domiciled in Missouri to exempt from

---

10. 202 B.R. 481 (9th Cir. BAP 1996).

11. *Id.* at 483.

12. *Id.* at 484.

13. *Id.* (citing *Collins v. Vickter Manor, Inc.,* 47 Cal.2d 875, 306 P.2d 783, 786 (1957) (en banc)).

14. *Id.* at 485.

15. *Welek Realty, Inc. v. Juneau,* 596 S.W.2d 495, 496 (Mo.Ct.App.1980).

16. *See* 11 U.S.C. § 541(a)(6); *FitzSimmons v. Walsh (In re FitzSimmons),* 725 F.2d 1208, 1211 (9th Cir.1984) (reasoning that to equate the earnings of a sole proprietorship with the earnings from services performed by an individual debtor would mean that creditors who look to the proprietorship for satisfaction of their claims would be denied the benefits of any profits earned by the proprietorship while any losses suffered by the practice would be borne by the estate and would reduce the value of the estate's assets, the Court held that the earnings exception applies only to the services performed *personally* by an individual debtor).

17. 11 U.S.C. § 522(b).

18. *Id.,* at § 522(d).

19. 11 U.S.C. § 522(b)(2)(A).

property of the estate any property that is exempt from attachment and execution under Missouri state law.[20] Ms. Parsons relies on section 525.030 of Missouri's Revised Statutes for her claim of exemption as to 75 percent of the commissions paid to her or her agency on pre-petition sales that closed post-petition. That section prevents a creditor from garnishing an amount in excess of 25 percent of an individuals earnings in even given pay period:

> 2. The maximum part of the aggregate earnings of any individual for any workweek, after the deduction from those earnings of any amounts required by law to be withheld, which is subjected to garnishment may not exceed (a) twenty-five percentum....

> For pay periods longer than one week, the provisions of subsection 2(a) ... shall apply to the maximum earnings subjected to garnishment for all workweeks compensated...

> The term **"earnings"** as used herein means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.[21]

I note that this Missouri statute substantially conforms with the Consumer Credit Protection Act, the federal exemption statute that has preempted state law so far as it is applicable to garnishment proceedings.[22] Therefore, the sole criteria for determining whether this exemption is applicable in any state is whether the earnings subject to garnishment "in fact and in a strict sense, represent 'compensation' for 'personal services.' "[23] By Ms. Parsons own testimony, she did not personally negotiate all of the contracts that resulted in the commissions at issue here. Nor did she perform all of the work necessary to take those contracts to closing. Instead, Ms. Parsons, together with the other five members of the "Janet Parsons Team," performed the work of her agency. I find that the commissions earned by her sole proprietorship are not compensation for personal services and that, therefore, Ms. Parsons is not entitled to exempt those commissions.

In making this claim of exemption, Ms. Parsons relied on the Eighth Circuit Bankruptcy Appellate Panel's (the BAP) decision in *Pruss v. Butler (In re Pruss).*[24] In *Pruss* a Nebraska attorney claimed a portion of her account's receivable as exempt.[25] A split panel of the BAP held that the wage exemption statute is not limited to wage earners in a traditional employer/employee relationship, that the statute applies to accounts receivable, and that the statute does not exclude independent contractors or sole proprietors.[26] The majority did, however, stress that only the portion of fees associated with an attorney's personal labor fall within the statute's definition of earnings.[27] And I note that Ms. Pruss only claimed as exempt the portion of her accounts receivable attributable to her personal services.[28] As the BAP clarified, "only those portions attributable to the Debtor's own personal services as contrasted with amounts attributed to the services of others or amounts reflecting profits or investment

---

20. Mo. Stat. Ann. § 513.427 (Supp.2000).

21. Mo. Stat. Ann. § 525.030.2.

22. *Gerry Elson Agency, Inc. v. Muck,* 509 S.W.2d 750, 751 (Mo.Ct.App.1974).

23. *Id.* at 753.

24. 235 B.R. 430 (8th Cir. BAP 1999).

25. The Missouri and Nebraska exemption statutes are similar as to this issue, and, as stated above, all state wage exemption statutes now comply with the federal provisions found in the Consumer Credit Protection Act.

26. *Pruss,* 235 B.R. at 433.

27. *Id.*

28. *Id.* at 430.

income," constitute earnings.[29] In concluding that accounts receivable include components other than the debtor's earnings, the BAP held that "the portion of the receivables that constitutes earnings from [personal] services can be linked to discreet periodic units of work time."[30] Ms. Parsons offered no evidence as to the portion of the commissions representing compensation for her own efforts. She testified that her success was dependent upon a team approach, and that other members of her team were involved in every transaction. She offered no discreet periodic units of work time to allow this Court to apportion the commissions at issue. Rather, Ms. Parsons, as a sole proprietor, valued her average monthly services on her bankruptcy schedules in the amount of $4,946.33. The schedules reflect average monthly income from her business of $55,833.33 and average monthly expenses from her business of $50,887.00. Her personal compensation, therefore represents 9.7 percent of the commissions paid to her agency by REMAX. I will find that 9.7 percent of the total commissions of $61,884.89, or $6,002.83, represents compensation for Ms. Parsons' own personal services, and is, thus, subject to her claim of exemption. She may, therefore, exempt the sum of $4,502.13 from the $38,892.37 in commissions received post-petition, and I will enter an Order requiring her to turn over to the Chapter 7 trustee the sum of $34,390.24.

An Order in accordance with this Memorandum Opinion will be entered this date.