# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 00-6099WM

———

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| Janet Lynn Parsons | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Janet Lynn Parsons | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| v. | * | Western District of Missouri |
| | * | |
| Union Planters Bank, and | * | |
| Fred C. Moon, Trustee | * | |
| | * | |
| Appellees. | * | |

———

Submitted: April 27, 2001
Filed: June 11, 2001

———

Before KRESSEL, SCOTT and KISHEL,[1] Bankruptcy Judges.

———

KRESSEL, Bankruptcy Judge.

---

[1] The Honorable Gregory F. Kishel, Chief Judge, United States Bankruptcy Court for the District of Minnesota, sitting by designation.

The debtor appeals from the order of the bankruptcy court[2] sustaining in part and overruling in part objections by the trustee, Fred C. Moon and Union Planters Bank[3] to the debtor's claim of exemption. We affirm.

BACKGROUND

Parsons is a licensed real estate agent. In 1993, she entered into an Independent Contractor Agreement with RE/MAX House of Brokers. The Agreement was in force during all relevant time periods. Pursuant to the Agreement, RE/MAX is obligated to "promptly" pay Parsons "the difference between . . . 100% of all commissions received by RE/MAX as a result of the efforts of [Parsons] and amounts, if any" which Parsons owes RE/MAX under the terms of the Agreement.[4] While the commission check from RE/MAX is apparently made payable to Parsons, the commissions are actually earned by the "Janet Parsons Team." This team consists of Parsons and five other people who work with her. Parsons uses the funds she receives from RE/MAX to pay her business operating expenses, including paying her employees, and she keeps the remainder.

Parsons filed a bankruptcy petition under Chapter 7 on March 6, 2000. At that time, she owed RE/MAX $22,992.52, pursuant to the terms of the Agreement, and RE/MAX owed her $61,884.89 for commissions earned but not yet paid. RE/MAX offset the amount owed it, and paid Parsons the difference of $38,892.37. This amount was paid post-petition. The commissions paid to Parsons arose from the sale of 15 properties, with all but 2 of the sales closing post-petition. However, for each of the 15 properties sold, all of the sales' contracts were executed prepetition. In addition, the bankruptcy court found that the commissions were generated prepetition through the efforts of the Janet Parsons Team, not Parsons alone.

In her bankruptcy schedules, Parsons claimed an exemption for 75% of the $38,892.37 in

_____

[2] The Honorable Arthur B. Federman, Chief Judge, United States Bankruptcy Court for the Western District of Missouri.

[3] Union Planters Bank filed a motion requesting permission to withdraw from this appeal, asserting that the bank and the debtor had entered into a settlement agreement in a separate adversary proceeding which determined the issues between the parties, and that the bank's interest in defending this appeal is sufficiently protected by the trustee. There were no objections to the motion. We grant the motion.

[4] For example, the Agreement provides that Parsons must pay RE/MAX a 5% Broker Service Fee on all earned commissions.

commissions under a Missouri wage exemption statute. The trustee and the bank objected, arguing that Parsons did not personally earn the commissions, and thus, her claimed exemption did not come within the requirements of the statute. Parsons also asserted that the entire $38,892 was earned post-petition because she and her team performed work post-petition to effectuate the sales' closings. Therefore, Parsons argued, the commissions are not property of the estate. Following an evidentiary hearing, the bankruptcy court ruled that: (i) under Missouri law, the commissions were earned prepetition, when the debtor produced a ready, willing and able buyer; (ii) only post-petition earnings from a debtor's personal services are excluded from the bankruptcy estate, but Parsons did not personally provide such post-petition services; and (iii) Parsons did not personally perform all of the services that generated the commissions, therefore, she was not entitled to the full 75% wage exemption under the applicable Missouri statute. Instead, she was allowed to exempt 9.7% as this figure represented 75% of the compensation for her personal efforts.[5]

## DISCUSSION

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Hervey v. Wendover Fin. Srvs. (In re Hervey)*, 252 B.R. 763, 765 (B.A.P. 8th Cir. 2000). A decision regarding whether property is property of the bankruptcy estate is a question of law reviewed de novo. *Brown v. Luker (In re Zepecki)*, 258 B.R. 719, 723 (B.A.P. 8th Cir. 2001).

### *Estate Property*

Bankruptcy Code § 541(a) provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" are property of the estate. 11 U.S.C. § 541(a)(1). "The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property . . . ." *Drewes v. Vote (In re Vote)*, No. 00-6115ND, 2001 WL 418715, at *2 (B.A.P. 8th Cir. 2001) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (quoting H.R. Rep. No. 95-595, at 367 (1977); S. Rep. No. 95-989, at 82 (1978); 1978 U.S.C.C.A.N. 5868, 6323)). The Bankruptcy Code further provides that the "[p]roceeds, offspring, rents, or profits of or from property of the estate" are

---

[5] *In re Parsons*, 252 B.R. 480 (Bankr. W.D. Mo. 2000). Another issue before the bankruptcy court was the trustee's assertion that RE/MAX was not entitled to offset the $22,992.52 obligation. The bankruptcy court ruled that the setoff was proper. No party appealed this determination, and thus, the issue is not before us and we do not address it.

likewise estate property, "except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).

"Property interests are created and defined by state law." *In re John Chezik Imports, Inc.*, 195 B.R. 417, 420 (Bankr. E.D. Mo. 1996) (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)). Under Missouri law, the general rule, as it is in many states, is that a real estate commission is earned when the broker or agent produces a buyer "ready, willing and able to buy" on the terms specified by the seller, "whether or not the sale is completed." *John Chezik Imports,* 195 B.R. at 420 (citing *Dark v. MRO Mid-Atlantic Corp.*, 876 S.W.2d 714, 716 (Mo. Ct. App. 1994)). Where the sale's contract is conditional, such as upon the closing of the sale, the contract does not become an enforceable obligation and the broker does not earn a commission until the conditions are met. *See John Chezik Imports*, 195 B.R. at 420; *Dark*, 876 S.W.2d at 717.

Here, the bankruptcy court found that none of the 15 sales' contracts conditioned payment of the commission on the closing of the sale. Indeed, Parsons did not argue that the sales' contracts were conditioned on the sales closing. The bankruptcy court correctly held that Parsons had an interest in the commissions when the sales' contracts were executed, because that is when the "ready, willing and able" buyers were produced. Under Missouri law, that is when the commissions were earned. *See John Chezik Imports,* 195 B.R. at 420; *Dark*, 876 S.W.2d at 716. Therefore, the bankruptcy court properly determined that Parsons' interest in the commissions arose prepetition, as all of the sales' contracts were executed prepetition. Thus, the commissions are property of the estate. *See* 11 U.S.C. § 541(a)(1).

Parsons argues vigorously that she, and members of her team, performed substantial services post-petition, without which, the sales would not have closed and there would be no commissions and thus, the commissions are not property of the estate pursuant to § 541(a)(1) and (6). She relies on *Cissell v. Zahneis (In re Zahneis)*, 78 B.R. 504 (Bankr. S.D. Ohio 1987). In *Zahneis*, the court held that real estate commissions were not estate property where the acts of the debtor necessary to earn the commissions were "not rooted in the prebankruptcy past." *See id.* at 505-506. This case is inapposite. As several other courts have pointed out, in *Zahneis*, only the listing had occurred prepetition; everything else (execution and negotiation of the sales' contract and escrow closing) occurred post-petition. *See id.* at 505-506; *Tully v. Taxel (In re Tully)*, 202 B.R. 481, 484 (B.A.P. 9th Cir. 1996); *Henning v. Mellor (In re Mellor)*, 226 B.R. 451, 458-59 (D. Colo. 1998). But where the acts of the agent necessary to earn the commission all took place prepetition (here, and in most cases, when the sale contract

4

was executed and the seller became obligated to pay the commission as a ready, willing and able buyer was produced), courts hold that the commission was earned prepetition and is estate property. *See e.g., Tully*, 202 B.R. at 483-84.[6]

Further, Parsons' own argument, that it was she and members of her team who performed the work, undercuts her assertion that the commissions should be excluded from estate property pursuant to 11 U.S.C. § 541(a)(6). In addition to requiring that the debtor perform post-petition services which generate the earnings, in order to be excepted from the estate property, this subsection also requires that the earnings arise from "services performed by the individual debtor." 11 U.S.C. § 541(a)(6). Since Parsons presented no evidence as to what portion, if any, of the earned commissions represented Parsons' own post-petition efforts, and not those of her team, the bankruptcy court found that there was no basis on which to conclude that the commissions fall within the exception contained in § 541(a)(6). This finding is not erroneous.

Finally, Parsons attempts to use the Missouri garnishment exemption statute to determine whether the commissions are estate property. She maintains that exemptions are determined on the date of filing the bankruptcy petition, and on the date she filed her petition, there were no earnings in the possession of RE/MAX which could be garnished under Missouri law since all the sales closed[7] and the commissions came to fruition later. Because RE/MAX did not have the commissions in its possession on the date of the filing, Parsons theorizes that no commissions could be garnished on that date and she is entitled to exempt them all. She points to Missouri Revised Statute § 525.030.3, which provides that: "In any proceeding of garnishment . . . the maximum part of the aggregate earnings of any individual in any workweek which shall be subject to garnishment . . . shall be construed to constitute all wages or earnings of the defendant in the

---

[6] This may also be analogized to cases where courts have held that broker commission agreements are materially performed when a buyer is produced, and thus the agreements are not executory *(see e.g., In re Snowcrest Dev. Group*, 200 B.R. 473, 477-78 (Bankr. D. Mass. 1996) (noting that whether the broker performs some post-petition services to finalize the closing or financing is not relevant to the inquiry)); or, to cases where the courts have denied an administrative expense claim to brokers where the broker performed some work post-petition to facilitate the sale's closing, but the commission was earned prepetition *(see, e.g, In re HSD Venture*, 178 B.R. 831 (Bankr. S.D. Cal. 1995) (relying on *In re Munple, Ltd.*, 868 F.2d 1129 (9th Cir. 1989)).

[7] This characterization by the debtor is not entirely accurate. Two of the sales closed prior to the filing of her bankruptcy petition.

5

garnishee's possession or charge or to owing by him to the defendant in that week." Mo. Rev. Stat. § 525.030.3. This argument is unavailing and, if she were correct, would actually be contrary to her assertion.

What constitutes property of the bankruptcy estate is not determined by looking to a state's garnishment exemption laws. The bankruptcy court instead correctly looked to Missouri law regarding when and how Parsons earned the real estate commissions. The court then applied Bankruptcy Code § 541(a) to determine that the commissions are estate property. *See* 11 U.S.C. § 541(a); *see also In re Cooley*, 87 B.R. 432, 437 (Bankr. S.D. Tex. 1988) (stating that, "[o]nce it is determined that [the] debtor possesses an interest in property recognized under state law, bankruptcy law controls exclusively whether such interest becomes property of the estate") (citing *Goff v. Taylor (In re Goff)*, 706 F.2d 574 (5th Cir. 1983)).

Finally, we note that at the time of filing her petition, the sales' contracts had been executed and thus, pursuant to the terms of the Agreement between Parsons and RE/MAX, Parsons did have earnings that were in RE/MAX's "possession or charge *or to be owing by [RE/MAX] to [Parsons] in that week.*" *See* Mo. Rev. Stat. § 525.030.3 (emphasis added); Agreement (providing that RE/MAX is obligated to "promptly" pay Parsons "the difference between . . . 100% of all commissions received by RE/MAX as a result of the efforts of [Parsons] and amounts, if any" which Parsons owes RE/MAX under the terms of the Agreement). Therefore, even if Missouri law did not provide that the commissions were earned prepetition, Parsons had, at least, a contingent interest in the commissions on the date of filing; contingent on the sales closing and RE/MAX receiving the funds. This contingent interest would be property of the estate under the broad parameters of Bankruptcy Code § 541(a)(1).

In *Jess v. Carey (In re Jess)*, 169 F.3d 1204 (9th Cir. 1999), the debtor-attorney argued, similar to the debtor here, that because he had no cause of action which would have allowed him to sue his client on the petition filing date for any portion of his contingency fee, the later-realized contingency fee was not property of the estate. The Ninth Circuit Court of Appeals dismissed this argument holding that: "Although [the debtor] may not have been able to sue his client for a portion of his fee at the time he filed his bankruptcy petition, he had an interest in the fee attributable to pre-petition work on the case" *Id.* at 1207-1208. This interest, the court stated, was "clearly property of the estate under section 541(a)(1)." *Id.* at 1208.

6

We conclude that the bankruptcy court properly determined that the $38, 892.37 in commissions earned by Parsons were earned prepetition and do constitute property of the estate.

*Commission Exemption*

Parsons claimed that if the commissions constituted property of the estate, then she was entitled to exempt 75% of the amount pursuant to the Missouri wage exemption statute, which prohibits a creditor from garnishing more than 25% of an individual's earnings in a given pay period. *See* Mo. Rev. Stat. § 525.030.2. The bankruptcy court allowed Parsons to exempt 9.7% of the $38,892.37 in commissions payable to her, or $4,502.13. Parsons argues that the bankruptcy court erred.

The statute in question provides, in pertinent part:

> 2. The maximum part of the aggregate *earnings of any individual* for any workweek, after the deduction from those earnings of any amounts required by law to be withheld, which is subject to garnishment may not exceed (a) twenty-five percentum. . . .
>> For pay periods longer than one week, the provisions of subsection 2(a) . . . shall apply to the maximum earnings subjected to garnishment for all workweeks compensated . . . .
>> The term *"earnings"* as used herein *means compensation* paid or payable *for personal services*, whether denominated as wages, salary, commission, bonus or otherwise . . . .

Mo. Rev. Stat. § 525.030.2 (emphasis added).

The bankruptcy court based its ruling, in part, on our decision in *Pruss v. Butler (In re Pruss)*, 235 B.R. 430 (B.A.P. 8th Cir. 1999), *vacated as moot,* 229 F.3d 1197 (8th Cir. 2000) (per curiam).[8] In *Pruss*, we reviewed a Nebraska wage garnishment exemption statute containing language similar to the Missouri statute. The Nebraska statute likewise defined earnings as "compensation paid or payable for

_____

[8] Subsequent to our decision in *Pruss,* the underlying bankruptcy case was dismissed and the Eighth Circuit Court of Appeals determined the appeal moot and remanded the matter to us with directions that we vacate the *Pruss* decision. *See Pruss v. Butler (In re Pruss)*, 229 F.3d 1197 (8th Cir. 2000) (per curiam); *Pruss v. Butler (In re Pruss)*, 255 B.R. 314 (B.A.P. 8th Cir. 2000) (vacating *Pruss*, 235 B.R. 430 in accordance with the Eighth Circuit's directive). *Pruss*, 235 B.R. 430, was vacated, for reasons which are unclear (a published opinion is generally not vacated when the underlying case is dismissed by the trial court). We agree with the rationale of the *Pruss* majority and adopt it here.

7

personal services." *See Pruss*, 235 B.R. at 432-33.  We stated there that the debtor was entitled to exempt the applicable portion of her earnings which were directly attributable to her "own personal services, as contrasted with amounts attributed to the services of others . . . ." *Id*. at 435.

To allow the debtor to exempt earnings attributable to the services and labor of others flies in the face of the plain language of the statute.  Here, the bankruptcy court found that Parsons' own testimony was that she did not personally negotiate all of the sales' contracts, nor did she perform all of the work necessary to close the sales.  Parsons herself provided a mountain of evidence that it was a "team effort." Parsons offered the bankruptcy court no evidence whatsoever regarding what portion of the commissions represented her personal services and efforts.

With this lack of evidence, the bankruptcy court could have disallowed Parsons' entire claimed exemption.  Instead, the court generously allowed Parsons a 9.7% exemption.  The court arrived at this figure using Parsons' bankruptcy schedules.  In her schedules, she valued her average monthly services in the amount of $4,946.33; her average monthly business income at $55,833.33; and her average monthly business expenses at $50,887.00.  Using these figures, the court found that her personal compensation represents 9.7% of the commissions paid to her real estate agency by RE/MAX, and determined that 9.7% of the commissions represented Parsons' personal services subject to her exemption claim.  We find that the bankruptcy court committed no clear error in this determination, and therefore affirm.

CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.

8