FILED

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

AUG 11 2017

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   ID-16-1316-JuFB |
| STEPHEN J. ANDERSON and MELANIE ANDERSON, | Bk. No.   4:15-bk-40878-JDP |
| Debtors. | |
| STEPHEN J. ANDERSON; MELANIE ANDERSON, | |
| Appellants, | |
| v. | **O P I N I O N** |
| GARY L. RAINSDON, chapter 7 trustee, | |
| Appellee. | |

Argued and Submitted on July 27, 2017
at Pasadena, California

Filed - August 11, 2017

Appeal from the United States Bankruptcy Court
for the District of Idaho

Honorable Jim D. Pappas, Bankruptcy Judge, Presiding

_____

Appearances:    Aaron J. Tolson of Tolson & Wayment, PLLC argued for appellants, Stephen J. Anderson and Melanie Anderson; Jason R. Naess of Parsons, Smith, Stone, Loveland & Shirley, LLP argued for appellee, Gary L. Rainsdon, chapter 7 trustee.

_____

Before:  JURY, FARIS, and BRAND, Bankruptcy Judges.

JURY, Bankruptcy Judge:

Appellants/debtors, Stephen J. Anderson and Melanie Anderson (Debtors), pose the issue in this appeal as an open question of law which splits the two divisions of the Idaho Bankruptcy Court. Debtors argue that because under Idaho law a licensed real estate professional does not earn a right to a sales commission until the sales transaction closes (which took place in this case after the petition date), such commission is not property of the estate and belongs to Debtors. According to Debtors, this is the position of the trustees in the Boise Division. To the contrary, in the Pocatello Division, where this case arises, trustees assert that such commissions are estate property, following our decision in Tully v Taxel (In re Tully), 202 B.R. 481, 483 (9th Cir. BAP 1996), a case arising in California where under state law the right to a commission does not require the transaction to close.

Despite Debtors' assertion that this is an open question, we hold that the Ninth Circuit in Jess v Carey (In re Jess), 169 F.3d 1204 (9th Cir. 1999), has answered the question, ruling that § 541[1] trumps any distinction in state law in this instance, its broad sweep making the contingent right to a commission estate property. Accordingly, WE AFFIRM.

///

///

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

## I. FACTS[2]

The facts are not in dispute. Debtors filed their chapter 7 petition on September 9, 2015 (Petition Date). Debtors are both licensed real estate agents. As agents, they were required to work under a broker. Accordingly, they associated with Keller Williams Realty East Idaho (Keller), as part of the Mike Hicks Realty Group (Hicks) team. Under Keller's business model, Debtors spent the bulk of their time interacting with buyers and sellers while Hicks' staff at Keller prepared the marketing materials, photographed the properties, and performed other administrative tasks. Keller also provided training to its agents. For these services, Debtors paid Keller a fee called a "cap."

Per their agreement with Keller, when Debtors earned a real estate commission, it was paid directly to Keller. In turn, Keller retained 36% of the commission until the $18,000 cap was met each year. After subtracting the amount applied to Debtors' cap, Keller then cut two checks to split the balance of the commission according to the Group/Team Contract. When Debtors acted as the buyer's agent, the contract provided for a 60/40 split between Debtors and Hicks, respectively. When Debtors were the listing agents, the contract provided for a 55/45 split between Debtors and Hicks, respectively.

Keller encouraged its agents to have a separate business entity into which the earned commissions were paid. The entity

---

[2] We borrow from the facts set forth in the bankruptcy court's published memorandum decision at 558 B.R. 369 (Bankr. D. Idaho 2016).

then paid the commission to the real estate agents as a salary. Debtors organized a company called Melanie Anderson Realty, Inc., but closed it before the Petition Date. After the Petition Date, Debtors created a new business entity called Bastille Enterprises, Inc. (Bastille). Melanie is the sole shareholder of Bastille, while Stephen is an employee. Bastille pays Debtors' business expenses and some of their personal expenses. Bastille also pays a salary to both Stephen and Melanie. Under the contract between Keller and Debtors, after Keller receives a commission, Keller pays Debtors' share to Bastille.

On the Petition Date, Debtors were involved in thirteen real estate transactions where a sales contract had been executed by the buyer and seller, but the sale had yet to close. Each transaction closed postpetition and Keller paid Debtors' share of the commission to Bastille.

On April 6, 2016, appellee/chapter 7 trustee, Gary L. Rainsdon (Trustee), filed a motion for turnover of $52,485.92 in commissions that were paid to Debtors through Bastille.[3] Trustee argued that the commissions were property of Debtors' bankruptcy estate because they had performed the work necessary

---

[3] Through the thirteen transactions, Debtors had earned approximately $105,222.00 in commissions. The amount of $52,485.92 is the "Associate Commission" amount included in the Associate Detail exhibits. The difference was paid to Hicks. Trustee maintained that the $52,485.92 amount was the amount he could prove Debtors had control or custody over during the pendency of the bankruptcy case. He did not pursue the remaining balance of the commissions which went to Hicks, but reserved his right to do so.

-4-

to earn the commissions prior to the Petition Date. Therefore, the commissions were subject to turnover under § 542(a). In response, Debtors argued that the commissions were not part of their estate because the commissions were paid to Bastille. Alternatively, Debtors asserted that if the commissions were part of their bankruptcy estate, a portion of the work to earn the commissions was performed postpetition. Debtors requested the bankruptcy court to apportion the commission between the pre- and postpetition period and order turnover of the portion earned prepetition.

After an evidentiary hearing, the bankruptcy court ordered simultaneous post-hearing briefing of the issues and took the matter under advisement.

The bankruptcy court issued a memorandum decision, finding that the commissions were property of Debtors' bankruptcy estate under § 541(a)(1) because all Debtors' acts necessary to earn the commissions were performed prepetition and therefore were rooted in the pre-bankruptcy past. The court also noted that under Idaho law, only a licensed real estate broker or salesperson is entitled to collect a real estate commission. Idaho Code § 54-2054. Therefore, as the licensed agents, the commissions belonged to Debtors, not to Bastille. The bankruptcy court concluded: "[T]hat Debtors had entered into a contract with Keller to have their commissions paid to Bastille, a corporation they created after their bankruptcy filing, does not alter the result. Under § 542(a), a debtor must turn over possession, **or account to the trustee**, for any property of the estate." 558 B.R. at 374.

Finally, the court found that Debtors produced no evidence which would allow it to apportion the commissions between pre- and post-bankruptcy efforts. As a result, Debtors did not show any portion of the commissions should be excluded from the estate under the "personal services" exception in § 541(a)(6). Therefore, the bankruptcy court ordered Debtors to turn over $52,485.92 to Trustee. Debtors filed a timely appeal from that order.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(E). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the commissions, which were paid on contracts entered into prepetition and deposited into the account of Bastille postpetition, should be considered property of Debtors' estate as of the date of the petition, thereby making them subject to turnover under § 542(a).

## IV. STANDARD OF REVIEW

Whether an asset is estate property is a conclusion of law reviewed de novo. Groshong v. Sapp (In re MILA, Inc.), 423 B.R. 537, 542 (9th Cir. BAP 2010).

## V. DISCUSSION

**A. Legal Standards**

Under § 542(a), an entity "in possession, custody, or control, during the case, of property that the trustee may use . . . shall deliver the property to the trustee, and account for, such property or the value of such property," subject to

certain exceptions.

Section 541(a) provides that the filing of a bankruptcy case creates an estate. The estate is "comprised of all the following property, wherever located any by whomever held: (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case." This definition of property of the estate has been broadly construed to encompass a debtor's contingent interest in future payments, as long as that interest is "sufficiently rooted" in the debtor's prepetition past, even if that interest is reliant on future contingencies that have not occurred as of the filing date. Segal v. Rochelle, 382 U.S. 375, 379-80 (1966). In this Circuit, any contingent interest of the debtor "sufficiently rooted in the pre-bankruptcy past" is estate property, even if the contingency is not satisfied until after the bankruptcy is filed. See Neuton v. Danning (In re Neuton), 922 F.2d 1379, 1382-83 (9th Cir. 1990) (beneficial interest in an inter vivos trust constituted property of the bankruptcy estate as debtor's interest vested upon the death of the preceding beneficiary which occurred after the bankruptcy petition was filed); Rau v. Ryerson (In re Ryerson), 739 F.2d 1423, 1425-26 (9th Cir. 1984) (contingent interests in payments due under a prepetition contract were property of the estate and passed to the trustee).

An exception to the broad definition of property of the estate is the postpetition earnings exception under § 541(a)(6). That section provides that earnings from services performed by an individual debtor after the commencement of the case are not property of his or her estate. In considering whether the

postpetition earnings exception applies, we first determine whether any postpetition services are necessary to obtain the payments at issue. In re Jess, 169 F.3d at 1208 (citing Towers v. Wu (In re Wu), 173 B.R. 411, 414-15 (9th Cir. BAP 1994) (citing In re Ryerson, 739 F.2d at 1426)). "If not, the payments are entirely 'rooted in the pre-bankruptcy past' and the payments will be included in the estate." Id. at 1208; see also Tully v Taxel (In re Tully), 202 B.R. 481, 483 (9th Cir. BAP 1996) (citing Segal, 382 U.S. at 380). "[W]here the debtor receives a commission post-petition but essentially fulfilled all of his obligations for that commission pre-petition, the commission will be deemed property of the estate." In re Tully, 202 B.R. at 483.

Given this background, in determining whether the commissions at issue here should be included in Debtors' estate, the touchstone is the Supreme Court's decision in Segal. There, the Supreme Court confronted the question whether the estate or the debtors owned a loss carryback tax refund claim arising from losses generated during the year of the bankruptcy filing. The Supreme Court determined that the refund claim was estate property based on its conclusion that the claim was "sufficiently rooted in the pre-bankruptcy past and [was] little entangled with the bankrupts' ability to make an unencumbered fresh start." 382 U.S. at 380. "The Code follows Segal insofar as it includes after-acquired-property 'sufficiently rooted in the prebankruptcy past' but eliminates the requirement that it not be entangled with the debtor's ability to make a fresh start." Johnson v. Taxel (In re Johnson), 178 B.R. 216, 218

(9th Cir. BAP 1995) (quoting In re Ryerson, 739 F.2d at 1426). Therefore, the test for purposes of deciding whether a postpetition payment on a prepetition contract is excluded from property of the estate under the earnings exception is whether the payment is "sufficiently rooted in the pre-bankruptcy past" so as to be included in the bankruptcy estate.

**B.   Analysis**

Debtors base their right to the commissions on two legal theories.  First, they contend that, under Idaho law, their commissions were not earned until the purchaser completed the transaction by closing title.  And this did not happen until after their petition was filed.  Implicitly, they suggest that they had no legal or equitable interests in the commissions on the Petition Date and that the timing of the closing was dispositive.

Second, they argue that the bankruptcy court erred by disregarding Debtors' business agreement with Keller and with Debtors' corporation Bastille.  Debtors maintain that the real estate sales contracts were property of Keller and not Debtors individually.  When the transactions closed, Keller was paid the commission in question.  Keller, in turn, paid Bastille, Debtors' corporation, and Debtors were paid either a salary or a distribution from Bastille.  Accordingly, Debtors maintain that by the time they received any portion of the commissions, it constituted postpetition earnings which are not subject to turnover under § 541(a)(6).  We are not persuaded by Debtors' arguments.

"Property interests are created and defined by state law."

-9-

*Butner v. United States*, 440 U.S. 48, 55 (1979).  However, what constitutes property of Debtors' bankruptcy estate is not determined by looking solely at Idaho law.  Instead, we look at Idaho law to determine when and how Debtors earned the real estate commissions and then apply §§ 541(a)(1) and (a)(6) to determine whether the commissions are estate property.

Generally, under Idaho law, a real estate broker is entitled to a commission when he or she (a) produces a purchaser ready, willing, and able to buy on the terms fixed by the owner; (b) the purchaser enters into a binding contract with the owner to do so; and (c) the purchaser completes the transaction by closing the transaction in accordance with the contract terms.  *Margaret H. Wayne Tr. v. Lipsky*, 846 P.2d 904, 911 (Idaho 1993).  Debtors' interest in receiving a commission upon the satisfaction of all three prongs set forth in *Lipsky* is a state law property right.  *See* *In re John Chezik Imports, Inc.*, 195 B.R. 417, 420 (Bankr. E.D. Mo. 1996).

Whether Debtors' state law property right in the commissions is estate property is answered by the analysis and reasoning set forth in *Jess*.  There, the debtor-attorney argued that because he had no cause of action which would have allowed him to sue his client for any portion of his contingency fee on the petition date, the later-realized contingency fee was not property of the estate.  After a hearing before the bankruptcy court, the debtor was ordered to turn over 78% of the fee to the estate, the amount attributable to the attorney-debtor's prepetition performance.  The Ninth Circuit affirmed, holding that:  "Although [the debtor] may not have been able to sue his

-10-

client for a portion of his fee at the time he filed his bankruptcy petition, he had an interest in the fee attributable to pre-petition work on the case." 169 F.3d at 1208. This interest, the court stated, was "clearly property of the estate under section 541(a)(1)." Id.

Here, like the debtor-attorney in Jess, Debtors entered into the real estate sale contracts prepetition. Under Idaho law, their right to receive the commissions was contingent upon the sales closing. Therefore, on the Petition Date, like Mr. Jess, Debtors had, at least, a contingent interest in the commissions that was attributable to their prepetition work. Id. at 1207-08; see also In re Neuton, 922 F.2d at 1382-83; In re Ryerson, 739 F.2d at 1425-26. This contingent interest which was attributable to their prepetition work is property of their estate under the broad parameters of § 541(a)(1).

Unlike Mr. Jess, Debtors presented no evidence at trial that shows they performed services postpetition in connection with the closings. This lack of evidence prevented the bankruptcy court from apportioning the commissions between pre- and postpetition work. Accordingly, the commissions, although received postpetition, were sufficiently rooted in the pre-bankruptcy past as to constitute property of Debtors' estate.

Finally, contrary to Debtors' arguments, the bankruptcy court considered Debtors' relationships with Keller and Bastille in deciding whether the commissions were property of Debtors' estate. Under Idaho law, only a licensed real estate broker or salesperson is entitled to collect a real estate commission. Idaho Code § 54-2054. And, under Idaho law, only an individual

-11-

may hold a real estate license. Idaho Code §§ 54-2004; 54-2002. Melanie testified that the commissions were earned by her and her husband. She also testified that she had never heard of a corporation earning a real estate commission. Her testimony was thus consistent with Idaho law.

Because Debtors were the licensed agents, only Debtors could have a legal or equitable interest in the commissions as of the commencement of their case. Bastille legally could not earn the commission. Furthermore, Bastille was not formed when Debtors filed their petition, and property of the estate is determined as of the petition date.

In addition, as the bankruptcy court held, Debtors' contract with Keller to have their commissions paid to Bastille does not change the result under § 542(a). Under the statute, Debtors must turn over property in their possession, and **account to the trustee**, for any property of the estate. Section 542(a) does not require current possession of the property. Newman v. Schwartzer (In re Newman), 487 B.R. 193, 200 (9th Cir. BAP 2013).

Debtors also argue that § 542 as applied in this case violates the Thirteenth Amendment's prohibition against involuntary servitude because the statute, in effect, forces Debtors to close the transactions in question for the sole benefit of their creditors after filing for bankruptcy. They further contend that § 542 violates their right to equal protection under the law. These arguments are raised for the first time on appeal. Therefore, we do not address them. See Cold Mountain v. Garber, 375 F.3d 884, 891 (9th Cir. 2004).

## VI.   CONCLUSION

In sum, for the reasons stated, we AFFIRM.  The bankruptcy court properly determined that the $52,485.92 in real estate commissions paid by Keller to Debtors postpetition constituted property of their estate.  Therefore, Debtors are required to turn over the commissions to Trustee under § 542(a).